## UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH A. O'KEEFE and<br>SIMMERIA CAFÉ & BISTRO, INC. | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action** |
| | ) | **No. 2011-cv-_____** |
| **v.** | ) | |
| | ) | |
| | ) | |
| ACE RESTAURANT SUPPLY, LLC,<br>KOREY BLANCK and<br>NICK BLANCK. | ) | **JURY TRIAL** |
| | ) | **DEMANDED** |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

### COMPLAINT

Plaintiffs, Joseph A. O'Keefe ("O'Keefe") and Simmeria Café & Bistro, Inc. ("Simmeria"), by and for their Complaint against Defendants, allege upon information and belief, except as to facts and matters that relate to Plaintiffs, which are alleged upon knowledge, as follows:

### NATURE OF ACTION

1.      This is an action for damages and injunctive relief brought by Plaintiffs for violations of the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") and applicable provisions of Pennsylvania statutory and common law.

### PARTIES

2.      Plaintiff O'Keefe is an adult individual who currently resides at 406 West Race Street, Fleetwood, Berks County, Pennsylvania 19522.

3.      At all times relevant hereto, O'Keefe was an owner and operator of Simmeria.

4.      Plaintiff Simmeria is an active corporation created, organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 24 East Main Street, Fleetwood, Berks County, Pennsylvania 19522.

5.      Defendant Ace Restaurant Supply, LLC ("Ace") is an active business entity created, organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business at 2100 North 11th Street, Reading, Berks County, Pennsylvania 19604.

6.      Defendant Korey Blanck, being sued in his individual capacity and as a representative of Ace, is an adult individual with a last known residential address at 750 Chestnut Street, Reading, Berks County, Pennsylvania 19602.

7.      At all times relevant hereto, Defendant Korey Blanck, was a co-owner and/or employee of Ace.

8.      Defendant Nick Blanck, being sued in his individual capacity and as a representative of Ace, is an adult individual with a last known residential address at 94 Mull Avenue, Reading, Berks County, Pennsylvania 19608.

9.      At all times relevant hereto, Defendant Nick Blanck, was a co-owner and/or employee of Ace.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action and the claims alleged herein under the RICO pursuant to 18 U.S.C. § 1961, *et seq*. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) in that they arise out of the same common core of operative facts and form part of the same case or controversy as the federal claims.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that the conduct giving rise to this action occurred in this District, Defendants regularly conduct business in this District, and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

12.     On its face, Ace appears to be a legitimate business entity specializing in sales of new and used bar and restaurant equipment in the Commonwealth of Pennsylvania as well as other states vis-a-vis Internet Sales.

13.     In addition to sale of equipment, according to its website, Ace offers services that include:

- Layout & Design;.
- Financing from $5,000 to $500,000 – maximum 20 year term;
- Licensed and insured carpenters, master plumbers, certified electricians, custom millwork, stainless fabrication to spec and other trades available;
- The furnishing of factory parts to you;
- Sharp authorized cash register dealer; and
- Booths, chairs, tables, seating arrangements; and
- Reupholster service available by skilled craftsmen.

14.     In February 2010, Plaintiff O'Keefe contacted, via telephone, Defendant Korey Blanck to inquire about the possibility of Ace supplying his new restaurant and bar, Simmeria, with a variety of new and used kitchen and bar equipment.

15.     Based on false representations made by Defendant Korey Blanck, as well as representations made on Ace's website, that Ace could provide O'Keefe and Simmeria with all the equipment it needed, on February 12, 2010, O'Keefe, on behalf of Simmeria, executed a Sales Agreement ("Agreement"), sent to him by Defendant Korey Blanck via facsimile, in which he ordered $20,602.16 worth of equipment.   (See Exhibit A hereto, a true and correct copy of the February 12, 2010 Sales Agreement).

16.     Shortly thereafter, O'Keefe, on behalf of Simmeria, contacted Defendants and placed another order for additional pieces of equipment worth $4,672.48.   (See Exhibit B hereto, a true and correct copy of March 16, 2010 Sales Agreement).

17.     All orders were pre-paid in full by O'Keefe and Defendants received a total of $35,803.62 from Plaintiffs.

18.     Once the Defendants were paid in full the true face of their operation began to unravel.

19.     Defendants failed to deliver flattop grill and castle bake oven which were ordered and paid for by O'Keefe on behalf of Simmeria.

20.     Plaintiff O'Keefe and/or his business associates have made numerous attempts to contact Defendants and to check on the status of the missing equipment. However, Defendants either did not answer the phone, failed to respond to messages or

came up with, often, an incoherent and factually inconsistent excuse for their failure to deliver the goods ordered.

21.    For example, in March and April 2010, during numerous telephone calls between the parties, Defendant Korey Blanck kept assuring O'Keefe and/or his business associates that the Castle bake oven was ordered and the manufacturer is the party responsible for the delay in delivery.  However, when Plaintiff O'Keefe contacted the manufacturer directly, he was told that Defendants did not order the oven.

22.    Defendants also delivered equipment that was inoperable and/or useless for Plaintiffs' purposes.  Specifically, (i) the direct drive exhaust fan was not usable in the size of the kitchen used by Plaintiffs; (ii) under-counter dishwasher was delivered broken and irreparable; and (iii) rotisserie countertop was also delivered broken and irreparable. Defendants were aware of the problems with the above listed equipment before delivery thereof yet they delivered the same with intent to defraud Plaintiffs and to make their conduct appear as a breach of contract and/or warranty issue.

23.    With deadlines pressing and patience running out, on May 20, 2010, O'Keefe sent a letter to Defendants in which he demanded either delivery of all the missing/broken equipment he purchased by May 25, 2010 or a complete refund no later than May 24, 2010.  (See Exhibit C hereto, a true and correct copy of O'Keefe's May 20, 2010 letter).

24.    On May 21, 2010, Defendants responded with a letter signed by Defendant Korey Blanck – sent via United States Postal Service – in which he attempted to rewrite the history of the relationship between Plaintiffs and Defendants by making denials and allegations that have no factual basis.    Most importantly, however,

Defendant Korey Blanck refused to refund any money paid to Defendants by Plaintiffs. (See Exhibit D hereto, a true and correct copy of Defendant's May 21, 2010 letter).

25.     To date, Defendants have not delivered the equipment ordered by Plaintiffs, as outlined above, and they have not made any refund of any money to them.

26.     Once Plaintiffs realized that Defendants were not a legitimate business entity -- and having remitted a substantial amount of money for equipment that was not being delivered or that was defective, with a company that stopped accepting phone calls once the funds had cleared, they began to research Defendants' background.

27.     It did not take long for Plaintiffs to learn that the above-described conduct of Defendants is just the way they do "business."  A number of formal and informal complaints filed and/or posted against Defendants and discovered by Plaintiffs reveal that Defendants routinely, through fraudulent misrepresentations, induce others into ordering equipment and/or services, which Defendants never intend to deliver and/or perform. Once Defendants take money from their victims, they either refuse to take phone calls or attempt to shift blame on their suppliers.  In one instance, as in Plaintiffs' case, a victim was told that the supplier/manufacturer failed to deliver a product and Defendants are not responsible for the delay.  When said victim contacted the supplier/manufacturer directly, he was told that no order was placed, yet Defendants kept his money -- exactly what occurred herein.

28.     Defendants, through fraudulent misrepresentations and with the use of the United States Postal Service and other electronic media, have been taking money from their victims for a number of years and they use illegally obtain funds to fight their victims in court.

29.     Many restaurant owners were unable to operate and/or start their businesses because of Defendants' scheme, which not only affected their income but also the incomes of their employees.

30.     Defendants routinely advertise in other markets, for example New York and Boston, through the use of the internet in order to defraud a larger number of individuals who, sometimes, may be financially unable to engage in interstate litigation to protect their business and personal interest.

31.     If not stopped, Defendants will continue to perpetrate their scheme and defraud hundreds if not thousands of individuals from their hard earned money.

## ALLEGATIONS RELATING TO RICO

32.     Plaintiffs incorporate and re-allege the proceeding paragraphs as if fully set out herein.

33.     The following allegations are made upon Plaintiffs' information and belief.

## ENTERPRISE

34.     Plaintiffs are "persons" within the meaning of 18 U.S.C. § 1964(c).

35.     At all times relevant hereto, Plaintiffs and Defendants were and are "persons" within the meaning of 18 U.S.C. § 1961(3).

36.     Defendant Ace Restaurant Supply, LLC and its executive officers, agents, employees, or the like, to wit, Defendants Korey Blanck and Nick Blanck who direct, manage and control the affairs of Ace Restaurant Supply, LLC, constitute an Enterprise as defined by  18 U.S.C. § 1961(4).

37.     The Enterprise is an ongoing organization which engages in, and whose activities affect, interstate commerce.

38.     Defendants maintain an interest in and control the Enterprise and also conduct or participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity.

39.     Defendants' control and participation in the Enterprise is necessary for the successful operation of Defendants' scheme.

40.     In order to retain monies paid by Plaintiffs and Defendants' other customers, Defendants devised a system that allowed them to manipulate Plaintiffs and other customers into believing that Defendants' business is a legitimate business entity, that it intends to fulfill its promises and that it will provide Plaintiffs and other customers with goods and/or services for which they paid.

41.     Defendants collectively are members of the Enterprise.   As a result of Defendants' fraudulent scheme and racketeering activities, Plaintiffs have been injured in their business and property.

## PREDICATE ACTS

42.     With respect to the activities alleged herein, each Defendant, and others not named as Defendants in this Complaint, in committing those activities, within the meaning of 18 U.S.C. § 2, have sought to aid and abet a scheme to violate 18 U.S.C. § 1962(c).  To wit, each Defendant also agreed to the operation of the scheme or artifice to deprive Plaintiffs of property interest.   In furtherance of these agreements, each Defendant also agreed to interfere with, obstruct, delay or affect commerce by attempting

to obtain and/or actually obtaining property interest of Plaintiffs to which Defendants are not entitled.

43.     With respect to the overt acts and activities alleged herein, each Defendant conspired with each other and others not named as Defendants in this Complaint, to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

44.     Each Defendant also agreed and conspired with each other to participate directly or indirectly, in the fraudulent scheme or artifice alleged herein to wrongfully retain money owed by Plaintiffs.  Each Defendant also agreed and conspired with each other to participate, directly or indirectly, in interfering with, obstructing, delaying or affecting commerce by attempting to obtain and/or actually obtaining property interest of Plaintiffs to which Defendants are not entitled.

45.     The numerous predicate acts of mail and wire fraud described herein are part of separate fraudulent schemes by Defendants designed to defraud Plaintiffs of money and property interest under false pretenses.  Plaintiffs are victims of these unlawful patterns of illegal activity and have suffered losses as a result of these activities.

46.     In carrying out the overt acts and fraudulent scheme described above, Defendants engaged in conduct in violation of federal laws, including 18 U.S.C. § 1341 and 1343, 18 U.S.C. § 1341 and 1346 and 18 U.S.C. § 1343 and 1346.

47.     Section 1961(1) of RICO provides that "racketeering activity" is an act indictable under any of the following provisions of Title 18, United States Code,  § 1341 (relating to mail fraud), § 1343 (relating to wire fraud) and § 1346 (relating to scheme or artifice to defraud).

## VIOLATIONS OF 18 U.S.C. §§ 1341 AND 1343

48.     Plaintiffs incorporate and re-allege the proceeding paragraphs as if fully set out herein.

49.     For the purpose of executing and/or attempting to execute their scheme to defraud and to obtain money by means of false pretenses, representations or promises, Defendants, in violation of 18 U.S.C. § 1341, placed in post offices and/or in authorized repositories for mail matter and things to be sent or delivered by the United States Postal Service and received matter and things therefrom including but not limited to agreements, invoices, correspondence, payments, faxes, plan materials and others.  Specific examples, though not limited solely thereto, of the means by which false pretenses, representations, or promises were/are routinely used by Defendants in violation of 18 U.S.C. § 1341 are Defendants' use of mail to provide Plaintiffs with their bogus Agreement of Sale, to receive payments from Plaintiffs and to send correspondence used in furtherance of their scheme.

50.     For the purpose of executing and/or attempting to execute their scheme to defraud and to obtain money by means of false pretenses, representations or promises, Defendants, in violation of 18 U.S.C. § 1343, transmitted and received by wire matter and things therefrom, including but not limited to agreements, correspondence, invoices, faxes and others.

51.     In those matters and things sent or delivered by the United States Postal Service, by wire and through other interstate electronic media, Defendants falsely and fraudulently misrepresented and fraudulently suppressed material facts from Plaintiffs in violation of 18 U.S.C. § 1341 and 1343, including but not limited to the following:

a.     Defendants misrepresented to Plaintiffs that they would provide them with the items ordered by Plaintiffs, upon receipt of a payment in full, when they never intended to provide Plaintiffs with said items.

b.     Defendants continued to deceive Plaintiffs by making statements, during telephone calls and/or in the correspondence mailed to Plaintiffs, that some of the items were ordered from the manufacturer when in fact Defendants never ordered or intended to order those items.

c.     Defendants used the United States Postal Service and/or fax to provide Plaintiffs with a bogus Sales Agreement which they never intended to honor and in which they misrepresented their intention to provide Plaintiffs with the ordered items.

d.     Defendants used the World Wide Web to falsely advertise their "services" via their web site and caused Plaintiffs to rely on false representations contained therein.

52.     Defendants intentionally and knowingly made these material misrepresentations and intentionally and knowingly suppressed material facts from Plaintiffs for the purpose of deceiving them and thereby obtaining financial gain.

53.     Defendants either knew or recklessly disregarded that the misrepresentations and omissions described above were material.  Plaintiffs necessarily relied on the misrepresentations and omissions in providing Defendants with payment for goods Defendants never intended to deliver.

54.     Plaintiffs have therefore been injured in their business or property by Defendants' overt acts and racketeering activities.

## PATTERN OF RACKETEERING ACTIVITY

55.     Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set out herein.

56.     As set forth above, Defendants have engaged in a "pattern of racketeering activity," as defined in § 1961(5) of RICO, by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as described above, within the past ten years.  Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon similar victims, including Plaintiffs.

57.     The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by Defendants, as described above, were related to each other and amount to and pose a threat of continued racketeering activity, and therefore, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5).

## COUNT I

### Violations of 18 U.S.C. § 1962(c)

58.     Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set out herein.

59.     This claim for relief arises under 18 U.S.C. § 1964(a) of RICO and seeks relief from Defendants' activities described herein for violations of 18 U.S.C. § 1962(c).

60.     Section 1962(c) of RICO provides that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct

of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

61.    Plaintiffs incorporate, as if fully set forth herein, their allegations that Defendants have engaged in a pattern of racketeering activity.

62.    Through the pattern of racketeering activities outlined above, Defendants have conducted and participated in the affairs of the Enterprise described above.

63.    With respect to their violations of § 1962(c), Defendants have acted at all times with malice toward Plaintiffs.

WHEREFORE, Plaintiffs, Joseph A. O'Keefe and Simmeria Café and Bistro, Inc., respectfully request judgment in their favor and against Defendants, Ace Restaurant and Supply, LLC, Korey Blanck and Nick Blanck in the amount of not less than $50,000.00, including interest, delay damages, counsel fees and other costs this Court deems appropriate.

## COUNT II

### Violations of 18 U.S.C. § 1962(d) by Conspiring to Violate § 1962(c)

64.    Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set out herein.

65.    This claim for relief arises under 18 U.S.C. § 1964(a) of RICO and seeks relief from Defendants' activities described herein for violations of 18 U.S.C. § 1962(d) for their conspiring to violate 18 U.S.C. § 1962(c).

66.    Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

67.     Plaintiffs incorporate, as if fully set forth herein, their allegations that Defendants have engaged in a pattern of racketeering activity.

68.     Absent Defendants' conspiracy and joint efforts, Defendants' scheme would not be successful.

69.     Defendants have violated § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c).  The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the § 1962(c) Enterprise, described previously, through a pattern of racketeering activities.

70.     As demonstrated in detail above, Defendants have engaged in numerous overt and predicate fraudulent racketeering acts in furtherance of the conspiracy including systemic fraudulent practices designed to defraud Plaintiffs of money and other property interests.

71.     Defendants' pattern of fraudulent racketeering acts include fraudulently inducing Plaintiffs into executing a bogus sales agreement and making payments for goods Defendants never intended to deliver.

72.     The nature of the above described acts, material misrepresentations, and omissions in furtherance of the conspiracy gives rise to an inference that Defendants not only agreed to the objective of an 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate 18 U.S.C. § 1962(c), but they were aware that their ongoing fraudulent acts have been and are part of an overall pattern of racketeering activity.

73.     As a direct and proximate result of Defendants' overt and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate

18 U.S.C. § 1962(c), Plaintiffs have been and continue to be injured in their business or property as set forth in detail above.  Pursuant to 18 U.S.C. § 1964(c) of RICO, Plaintiffs are entitled, therefore, to bring this action and protect their interest.

74.    Defendants have sought to and have engaged in the commission and continue to commit overt acts and unlawful racketeering predicate acts that have, and continue to, generate income or proceeds received by Defendants from such pattern of racketeering activity, including multiple instances of mail and wire fraud violations of 18 U.S.C. §§ 1341 and 1343.

75.    Defendants' violations of the above federal laws and the effects thereof detailed above are continuing and will continue unless injunctive relief prohibiting the Defendants illegal acts constituting a pattern of racketeering activity is fashioned and imposed by the Court.

76.    As a proximate result of Defendants' conduct as described above, Plaintiffs have been injured in their business and property.

WHEREFORE, Plaintiffs, Joseph A. O'Keefe and Simmeria Café and Bistro, Inc., respectfully request judgment in their favor and against Defendants, Ace Restaurant and Supply, LLC, Korey Blanck and Nick Blanck in the amount of not less than $50,000.00, including interest, delay damages, counsel fees and other costs this Court deems appropriate.

## STATE CLAIMS

## COUNT III

## Fraud

77.     Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set out herein.

78.     Defendants, Korey Blanck and Nick Blanck, individually and in their capacity as owners and operators of Ace, represented to Plaintiffs that they had the ability to deliver and properly install the items contained in their Agreement.

79.     Defendants, Korey Blanck and Nick Blanck, made the aforementioned oral and written representations to Plaintiffs in order to induce Plaintiffs to sign the Agreement.

80.     Defendants, Korey Blanck and Nick Blanck, made the aforementioned oral and written representations when they knew or should have known them to be false.

81.     Defendants, Korey Blanck and Nick Blanck, individually and in their capacity as owners and operators of Ace, made statements that legally bound Ace to deliver and install the ordered items.

82.     Plaintiffs relied on Defendants oral and written representations when they signed the Agreement.

83.     Defendants, Korey Blanck and Nick Blanck, fraudulently induced Plaintiffs, through their oral and written statements, to issue a full and final payment for delivery and installation of the items contained in the Agreement prior to the delivery and

installation thereof when they knew or should have known that they were not entitled to the aforementioned monies, as they never intended to provide said goods to Plaintiffs.

84.     Defendants have failed and continue to fail to deliver and install the items contained in the Agreement.

85.     Defendants statements were fraudulent, willful and wonton.

86.     Defendants knew or should have known that Plaintiffs would rely and did rely on their oral and written representations.

87.     As a result of Plaintiffs relying on the oral and written representations made by Defendants, Plaintiffs have suffered damages including but not limited to, delay damages, lost business revenue, lost future business revenue, and lost business opportunity.

WHEREFORE, Plaintiffs, Joseph A. O'Keefe and Simmeria Café and Bistro, Inc., respectfully request judgment in their favor and against Defendants, Ace Restaurant and Supply, LLC, Korey Blanck and Nick Blanck in the amount of $50,000.00 including interest, delay damages, counsel fees and other costs this Court deems appropriate.

## COUNT IV

### Unjust Enrichment

88.     Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set out herein.

89.     Defendants, through fraudulent and false oral and written representations, caused Plaintiffs to enter into the Agreement and to pre-pay them $35,803.62 for delivery and installation of items contained in the Agreement.

90.     Defendants did not intend to install and deliver the above listed items, however, they received and kept Plaintiffs' full payment.

91.     Defendants were and are aware of the fact that they are not entitled to the money received from Plaintiffs, yet they refused to return the same.

92.     Withholding Plaintiffs' money and using the same for personal and/or business purposes unjustly enriched Defendants.

WHEREFORE, Plaintiffs, Joseph A. O'Keefe and Simmeria Café and Bistro, Inc., respectfully request judgment in their favor and against Defendants, Ace Restaurant and Supply, LLC, Korey Blanck and Nick Blanck in the amount of $35,000.00, including interest, delay damages, counsel fees and other costs this Court deems appropriate.

## COUNT V

### Intentional Misrepresentation

93.     Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set out herein.

94.     Prior to signing of the Agreement, Defendants represented to Plaintiffs that they would deliver and install the items listed in the Agreement and that said items would be delivered in a working condition.

95.     Defendants' representations, fully described above, were material to the transaction between the parties.

96.     Defendants' representations were intentional and false, as they knew that they would not deliver and install certain items and/ or that some of the items were not operable.

97.    Defendants intended to mislead Plaintiffs into relying on their representations.

98.    Plaintiffs' relied on Defendants' representations and waited for said items before they could begin their business operations.

99.    Plaintiffs' damages were caused directly and proximately by their reliance on Defendants' misrepresentations.

100.    Plaintiffs' reliance on Defendants' misrepresentations should have been and was foreseeable to Defendants.

101.    As a result of Plaintiffs relying on the oral and written representations made by Defendants, Plaintiffs have suffered damages including but not limited to, delay damages, lost business revenue, lost future business revenue, and lost business opportunity.

WHEREFORE, Plaintiffs, Joseph A. O'Keefe and Simmeria Café and Bistro, Inc., respectfully request judgment in their favor and against Defendants, Ace Restaurant and Supply, LLC, Korey Blanck and Nick Blanck in the amount of $50,000.00, including interest, delay damages, counsel fees and other costs this Court deems appropriate.

## COUNT VI

### Negligent Misrepresentation

102.    Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set out herein.

103.    Prior to signing of the Agreement, Defendants represented to Plaintiffs that they would deliver and install the items listed in the Agreement and that said items would be delivered in a working condition.

104.    Defendants' representations, fully described above, were material to the transaction between the parties.

105.    Defendants' representations were made under circumstances in which they knew or should have known of their falsity.

106.    Defendants' representations were made with intent to cause Plaintiffs to enter into the Agreement.

107.    Plaintiffs' relied on Defendants' representations and waited for the items before they could begin their business operations.

108.    Plaintiffs' reliance on Defendants' misrepresentations should have been and was foreseeable to Defendants.

109.    As a result of Plaintiffs relying on the oral and written representations made by Defendants, Plaintiffs have suffered damages including but not limited to, delay damages, lost business revenue, lost future business revenue, and lost business opportunity.

WHEREFORE, Plaintiffs, Joseph A. O'Keefe and Simmeria Café and Bistro, Inc., respectfully request judgment in their favor and against Defendants, Ace Restaurant and Supply, LLC, Korey Blanck and Nick Blanck in the amount of $35,000.00, including interest, delay damages, counsel fees and other costs this Court deems appropriate.

## COUNT VII

### Declaratory Relief

110.    Plaintiffs incorporate and re-allege the preceding paragraphs as if fully set out herein.

111.    Declaratory relief under the federal Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202 is appropriate in this action in that there is a real, actual and substantial controversy between the parties regarding, at minimum, Defendants' regular and routine violations of 18 U.S.C. § 1961, et seq., as stated above.

112.    Declaratory relief would serve a useful purpose in declaring the parties' rights and would eliminate any legal uncertainty regarding the validity and legality of Defendants' conduct.

113.    Absent this Court's intervention, Defendants' conduct will continue with impunity.

WHEREFORE, Plaintiffs demand judgment in their favor and against Defendants that finds their conduct illegal and further enjoins such illegal acts prospectively, and such other relief as this Court deems necessary and appropriate.

**Jury Trial Demanded**

114.    Plaintiffs hereby demand a jury trial as to all issues herein.

Dated:  February 23, 2011                    **O'Keefe & Sher, P.C.**

By:     /s/ Konrad B. Jarzyna
        Konrad B. Jarzyna
        PA I.D. No. 92400
        15019 Kutztown Road
        Kutztown, PA 19530
        (610) 683-0771

Exhibit
A

**FOOD SERVICE EQUIPMENT**
NEW AND USED

# ACE RESTAURANT SUPPLY
2100 NORTH 11TH ST. READING, PA 19604
PHONE: 610-685-5464

**DISTRIBUTION**
USA - CANADA - CARIBBEAN

Any unauthorized 3rd party service, adjustments, or repairs, voids the remainder of any and all warranties.

# ALL SALES FINAL
(SALES AGREEMENT)

DATE: 2/12/10

NET:

**SOLD TO:**
NAME: Simmeria Cafe + Bistro, Inc.
ADDRESS: c/o O'Keefe + Shurr, PC
CITY: 15019 Kutztown Road  STATE:  ZIP:
COUNTY: Kutztown, PA  COUNTY CODE: 19530

**INSTALL AT:** (IF DIFFERENT FROM BILLING ADDRESS)
NAME: Simmeria Cafe + Bistro, Inc.
ADDRESS: 24 East Main Street
CITY: Fleetwood PA  STATE: 19522  ZIP:
COUNTY:  COUNTY CODE:

| QTY. | PROD. CODE | MODEL DESCRIPTION | PRICE | TAXES | SURCHARGE | TOTAL AMOUNT |
|---|---|---|---|---|---|---|
| 1 | New | 6'6" 99 Hood 36" Hood 12" Front 24" Back | | | | $2669. |
| | | Filters-99 cup-prewired lites-hanging brackets | | | | |
| | | Direct Drive All 200 Exhaust Fan UL 762 Fan Curb | | | | |
| 1 | Used | 2 Box 5 tap Beer System | | | | $2795. |
| 1 | Used | Undercounter Dishwasher American dish machine | | | | $2350. |
| 1 | New | 2 Door glass Lowboy for Beer to go | | | | $3890. |
| 1 | New | 24" Castle Flat Top Grill-Gas | | | | $870. |
| 1 | New | 24" Castle Rock- Char Broiler- Gas | | | | $835. |
| 1 | New | 2 Basket Floor Fryer | | | | $840. |
| 1 | New | Rotisseri Countertop Volrath 8 Bird | | | | $2785. |

| TERMS | PAYMENT TERMS WILL BE AS SPECIFIED ON THE FACE OF THIS SALES AGREEMENT. THE TERMS AND CONDITIONS OF THIS AGREEMENT SHALL PREVAIL NOTHWITHSTANDING ANY VARIANCE WITH THE TERMS AND CONDITIONS OF ANY BUYER'S ORDER. | TOTAL | |
|---|---|---|---|

INTENDING TO BE LEGALLY BOUND HEREBY, SELLER PROPOSES TO FURNISH AND THE CUSTOMER AGREES TO PURCHASE THE ABOVE DESCRIBED GOODS AT THE PRICE SET FORTH SUBJECT TO THE TERMS AND CONDITIONS ON BOTH SIDES OF THIS DOCUMENT.

CUSTOMER SIGNATURE

I/We have read and fully understand both sides of this sales agreement and accept all terms and conditions contained herein.

PHONE NO. 484-824-8317

PRINT SIGNER'S NAME AND TITLE Joseph Scott, ws

I/We have read and fully understand the demand note contained below prior to my/our signing.

Re; Default   Seller hereby authorizes and empowers the Prothonotary, Clerk, or any Attorney of any Court of Record within the united States, to appear for Customer and to confess judgement as often as necessary against Customer and in favor of Seller or its assigns, as of any term, with or without declaration filed, for such sums as may be payable hereunder (including such as are past due prior to acceleration) together with interest thereon and costs of suit, plus twenty-five percent (25%) added as attorney's fees for collection, and/or an amicable action of replevin for the equipment. With respect to any judgement hereon, Customer releases and waives all rights of appeal, appraisement, stay of execution, inquisition and exemption under any law now or hereafter in force, and customer hereby agrees that real estate may be sold under writ of execution and voluntarily condemns the same and authorizes the Prothonotary or Clerk to end said condemnation on such writ.

All permits, approval and reviews, are the sole responsibility of the customer. The equipment above is ordered for you as the customer for your job location only. It is not cancelable or returnable ACE Restaurant Supply LLC does not hook up, install any and all equipment. Installation is the customer's responsibility.
ACE Restaurant Supply LLC/Contractors do not remove any store entrance doors, door frames, windows to allow access to Customer building. ACE Restaurant Supply LLC is not liable for any delays with manufacturers, freight lines and distributors.

CUSTOMER SIGNATURE   DATE

$_____   20____
On demand after date I / We promise to Pay to the order of ACE RESTAURANT SUPPLY
_____ Dollars
Without defalcation, value received with interest:
And further, I/We do hereby authorize and empower the Prothonotary, Clerk or any Attorney of any Court of Record in Pennsylvania or elsewhere to appear for and to confess judgment against I/We for the above sum with or without complaint with cost of suit, release of error, without stay of execution, and with 25 percent, added for collection fees and I/We also waive the right of inquisition on any real estate or personal property that may be levied upon to collect this note and do further hereby voluntarily condemn the same and authorize the Prothonotary to enter upon the Writ of Execution I/We said voluntary condemnation and I/We further agree that said real estate or personal property may be sold on a Writ of Execution and I/We hereby waive and release all relief from any and all appraisement, stay or exemption laws of any State, now in force, or hereafter to be passed. Witness My/Our hand and seal the say and year aforesaid.

(SEAL)

In seller's opinion, any abuse, neglect, vandalism, or faulty electric supply shall void all warranties without pro-rated reimbursement. **NO REFUNDS.** All electronics require a dedicated and grounded power source per manufacturer specs. Failure to provide same voids warranty. All terms and conditions on backside of this sales agreement apply and are all in full effect.

Page 1 of 2

FOOD SERVICE EQUIPMENT
NEW AND USED

## ACE RESTAURANT SUPPLY
2100 NORTH 11TH ST. READING, PA 19604
PHONE: 610-685-5464

DISTRIBUTION
USA - CANADA - CARIBBEAN

DATE: 2/12/10

Any unauthorized 3rd party service, adjustments, or repairs, voids the remainder of any and all warranties.

# ALL SALES FINAL
(SALES AGREEMENT)

NET:

**SOLD TO:**
NAME: Simmeria Cafe+ Bistro Inc.
ADDRESS: To O'Keefe + Sharr PC
CITY: 15019 Kutztown Road
COUNTY: Kutztown  PA  COUNTY 19530

**INSTALL AT:** (IF DIFFERENT FROM BILLING ADDRESS)
NAME: Simmeria Cafe + Bistro Inc
ADDRESS: 24 East Main Street
CITY: Fleetwood  PA  19522
COUNTY:  COUNTY CODE

| QTY. | PROD. CODE | MODEL DESCRIPTION | PRICE | TAXES | SURCHARGE | TOTAL AMOUNT |
|------|-----------|-------------------|-------|-------|-----------|--------------|
| 1 | New | 3 Bay Sink - New 88 NSF w/faucet brass chrome | | | | $ 699. |
| 1 | New | Greasetrap NSF Kling-er | | | | $ 465. |
| 2 | New | Infared Countertop Range | 349. each | | | $ 798. |
| 1 | New | 48" Bain Marie | | | | $ 1875. |
| 1 | New | Equipment Stand | | | | $ 360. |
| | | Waffle Iron | No Charge | | | |
| | | - Credit For Trade In As-Is Equip. | | | | $ 21,221.00 |
| | | TEM 200 Deli Case   Moffat Oven | | -$1785 | | -1,785.00 |
| | | Counter Storage 27" Bain Marie | | | | $ 19,436.00 |
| | | 1 Door Freezer | | | 6.90 TX | 1,166.16 |

| TERMS | PAYMENT TERMS WILL BE AS SPECIFIED ON THE FACE OF THIS SALES AGREEMENT. THE TERMS AND CONDITIONS OF THIS AGREEMENT SHALL PREVAIL NOTWITHSTANDING ANY VARIANCE WITH THE TERMS AND CONDITIONS OF ANY BUYER'S ORDER. | TOTAL | 20,607.16 |

INTENDING TO BE LEGALLY BOUND HEREBY, SELLER PROPOSES TO FURNISH AND THE CUSTOMER AGREES TO PURCHASE THE ABOVE DESCRIBED GOODS AT THE PRICE SET FORTH SUBJECT TO THE TERMS AND CONDITIONS ON BOTH SIDES OF THIS DOCUMENT.

CUSTOMER SIGNATURE

PRINT SIGNER'S NAME AND TITLE
Joseph Okadzu
Pres.

I/We have read and fully understand both sides of this sales agreement and accept all terms and conditions contained herein.

PHONE NO.
484-824-8317

I/We have read and fully understand the demand note contained below prior to my/our signing.

Re; Default   Seller hereby authorizes and empowers the Prothonotary, Clerk, or any Attorney of any Court of Record within the united States, to appear for Customer and to confess judgement as often as necessary against Customer and in favor of Seller or its assigns, as of any term, with or without declaration filed, for such sums as may be payable hereunder (including such as are past due prior to acceleration) together with interest thereon and costs of suit, plus twenty-five percent (25%) added as attorney's fees for collection, and/or an amicable action of replevin for the equipment. With respect to any judgement hereon, Customer releases and waives all rights of appeal, appraisement, stay of execution, inquisition and exemption under any law now or hereafter in force, and customer hereby agrees that real estate may be sold under writ of execution and voluntarily condemns the same and authorizes the Prothonotary or Clerk to end said condemnation on such writ.

All permits, approval and reviews, are the sole responsibility of the customer. The equipment above is ordered for you as the customer for your job location only. It is not cancelable or returnable ACE Restaurant Supply LLC does not hook up, install any and all equipment. Installation is the customer's responsibility.
ACE Restaurant Supply LLC/Contractors do not remove any store entrance doors, door frames, windows to allow access to Customer building. ACE Restaurant Supply LLC is not liable for any delays with manufacturers, freight lines and distributors.

_____
CUSTOMER SIGNATURE                    DATE

$ _____    20 ____
On demand after date  I / We  promise to
Pay to the order of   ACE RESTAURANT SUPPLY
_____ Dollars
Without defalcation, value received with interest:
And further, I/We do hereby authorize and empower the Prothonotary, Clerk of Court, or any Attorney of any Court of Record of Pennsylvania or elsewhere, to appear for me, and enter judgment against I/We for the above sum with or without complaint, with costs of suit, release of errors, without stay of execution, and with 25 percent, added for collection fees, and I/We also waive the right of inquisition on any real estate or personal property that may be levied upon to collect this note and do hereby voluntarily condemn the same and authorize the Prothonotary to enter upon the Writ of Execution I/We said voluntary condemnation and I/We further agree that said real estate or personal property may be sold on a Writ of Execution and I/We hereby waive and release all relief from any and all appraisement, stay or exemption laws of any State, now in force, or hereafter to be passed. Witness My/Our hand and seal the day and year aforesaid.
_____ (SEAL)

In seller's opinion, any abuse, neglect, vandalism, or faulty electric supply shall void all warranties without pro-rated reimbursement. **NO REFUNDS.** All electronics require a dedicated and grounded power source per manufacturer specs. Failure to provide same voids warranty. All terms and conditions on backside of this sales agreement apply and are all in full effect.

Page 2 of 2

# Exhibit B

FOOD SERVICE EQUIPMENT
NEW AND USED

**ACE RESTAURANT SUPPLY**
2100 NORTH 11TH ST. READING, PA 19604
PHONE: 610-685-5464

DISTRIBUTION
USA - CANADA - CARIBBEAN

Any unauthorized 3rd party service, adjustments, or repairs, voids the remainder of any and all warranties.

# ALL SALES FINAL
(SALES AGREEMENT)

DATE: 3/16/10

NET:

SOLD TO:
NAME: Simmeria Cafe + Bistro, Inc.
ADDRESS: c/o O'Keefe + Shurr PC
CITY: 15019 Kutztown Road  STATE  ZIP
COUNTY: Kutztown PA 19530  COUNTY CODE

INSTALL AT:
NAME: Simmeria Cafe + Bistro Inc.
ADDRESS: 24 East Main Street
CITY: Fleetwood PA 19522
COUNTY  COUNTY CODE

| QTY. | PROD. CODE | MODEL DESCRIPTION | PRICE | TAXES | SURCHARGE | TOTAL AMOUNT |
|---|---|---|---|---|---|---|
| 1 | New | Castle Bake Oven w/ wire rack + Stone on bottom shelf | | | | 2960.00 |
| 1 | Used | APW Hot Dog Roller Grill | | | | 779.00 |
| 1 | Used | APW Acrylic Roller Cover | | | | 170.00 |
| 1 | Used | Round Up Bun Steamer | | | | 499.00 |
| | | | | Sales Tax | | 264.48 |

TERMS  PAYMENT TERMS WILL BE AS SPECIFIED ON THE FACE OF THIS SALES AGREEMENT. THE TERMS AND CONDITIONS OF THIS AGREEMENT SHALL PREVAIL NOTWITHSTANDING ANY VARIANCE WITH THE TERMS AND CONDITIONS OF ANY BUYER'S ORDER.  TOTAL 4672.48

PHONE NO. 484-824-8317

# ADDITIONAL TERMS AND CONDITIONS

If this Proposal (which constitutes an offer by Customer) is accepted by Seller,
the additional terms and conditions hereinafter stated shall become
a part of this agreement by and between Customer and Seller.

1.  If sales contract proposal is subject in all respects to approval and acceptance by Seller at its home office and when so accepted is binding upon both parties, but Customer waives notice of such acceptance.

2.  DISCLAIMER: CUSTOMER TAKES THE GOODS AS IS, AND SELLER MAKES NO WARRANTIES EITHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, excepting that warranty, if any, which appears on the face of this contract.

3.  Seller shall not be held liable for claimed manufacturer's warranty, if any. Seller shall not be liable for any lost profits, or special, indirect or consequential damage, including, but not limited to, any claims for business loss, which damages arise out of or result from the failure of the Goods to perform in an adequate manner, loss of foods, customers or product of any nature.

4.  Customer understands that this contract is solely for the described equipment, subject to the terms contained herein and Seller is not providing any software. Seller makes no representations of any kind and assumes no liability whatsoever with respect to any software. Any failure, malfunction or dissatisfaction with any software purchased by the Customer shall not be deemed the fault of the Seller nor a basis for nonpayment if accordance with the terms of this agreement.

5.  Seller shall not be responsible for any costs or expenses occurring as a result of any repairs to, alterations of, or replacements to any Goods made by the Customer without advance written consent of the Seller. There are no exceptions.

6.  Until Customer has paid to seller the total purchase price for the Goods and all sums owing pursuant to this agreement, and until Customer has performed all obligations arising pursuant to, this agreement. Customer shall use the Goods solely in the ordinary conduct of its business, and in a careful and proper manner, and shall not part with possession thereof or assign or transfer Customer's interest therein. Seller holds title and all interest in equipment until paid in full in U.S. funds.

7.  Until Customer has paid to Seller the total purchase price for the Goods and all sums owing pursuant to this agreement, Customer will insure the Goods against all casualties and hazards in amounts satisfactory to collect sale price. Customer assigns to Seller all rights to receive proceeds of such insurance not exceeding Customer's obligations plus 25% additional for each loss, and directs any insurer to pay such proceeds directly to Seller and authorizes Seller to endorse any draft for the proceeds.

8.  As between the Customer and Seller, Customer hereby assumes and shall bear the entire risk of the loss of and damage to the Goods from any and every cause whatsoever from the date of delivery of said Goods to Customer. There are no exceptions.

9.  Upon request by Seller, Customer shall procure for the benefit of Seller landlord and mortgagee waivers pertaining to the Goods and/or UCC-1 's.

10.  Any failure by customer to make full and timely performance of any obligations pursuant to the provisions of this agreement shall constitute a material breach hereof. In such event, Seller shall have the right to declare all sums owing pursuant to this agreement to be immediately due and payable and shall have all other rights or remedies provided herein or otherwise provided by the law or equity. All of Seller's rights hereunder are cumulative. Seller may elect to record judgement note, levy and execute with Sheriff for monies owned.

11.  Customer shall pay Seller all costs and expenses, including 25% attorneys' fees, or a minimum of $500.00, the fees of collection agencies, and other such expenses incurred by Seller in enforcing this agreement.

12.  Seller shall not be liable for loss due to delays, postponement, suspensions or cancellations of shipment caused by manufacturer's inability to make shipment as required, strikes, acts of God, fire, riot, delays in public or private transportation, delays in verification of information furnished by manufacturer, inability to obtain fuel or other cause or causes beyond the Seller's control, including freight, transportation delays and freight damage(s).

13.  If Customer fails to pay when due any amount owing under this agreement Customer shall become liable to and shall pay to Seller a service charge of: (a) 25% of the delinquent amount, or (b) $100.00, whichever is greater. In addition, interest shall be charged on such delinquent amount from the due date thereof until the date of payment at 20%, plus expenses of collection, and attorneys' fees of $200.00 per hour.

14.  DEFAULT In the event of the Customer's failure to perform any of the Customer's obligations or in the event that Customer shall mortgage or part with possession of the Goods covered by this sales contract proposal or in the event that the Customer becomes insolvent or makes an assignment for the benefit of creditors or in the event that a petition is filed by or against the Customer under the Bankruptcy Act or any other insolvency law providing for the relief of debtors, then all amounts remaining unpaid hereunder and any incidental damages plus collection expense including attorneys' fees to the extent allowed by law, shall become immediately due and payable without demand or notice. In addition and to the extent permitted by law. Seller shall have the right without prior notice to the Customer to enter into and upon the premises where the equipment covered by the sales contract proposal may be found and take possession thereof, without further proceedings and Seller may without notice declare this agreement terminated and may retain the amounts received by it hereunder as liquidated damages.

15.  This agreement and any schedules if attached at the time of the execution hereof contain the entire understanding between Customer and Seller and this understanding may not be amended, modified or terminated except in writing by ACE Restaurant Supply LLC solely.

16.  Customer agrees to promptly pay all property duties use excise, value added, sales or other taxes on this transaction whether quoted in this proposal or not or on the equipment or machinery covered by this contract whether imposed upon Customer or Seller, and until paid such taxes will be deemed an obligation under this contract.

17.  SECURITY AGREEMENT - It is expressly agreed that the Customer hereby grants to Seller a security interest in and to all of the Goods including the proceeds thereof covered by the sales contract proposal until full payment of the purchase price for such Goods has been made to the Seller. This document shall constitute a security agreement and authorize the Seller, the secured party, to file a financing statement giving the Seller the remedies of a secured party under the Uniform Commercial Code. Customer agrees to execute any document including a financing statement which the Seller deems desirable to protect the Seller's security interest herein and the Customer does hereby authorize the filing or recording of this sales contract or any financing statement or other document in connection herewith in the manner provided by law or regulation and the Customer authorizes Seller to file any such financing statements relating Goods covered by this sales contract proposal without the Customer's signature thereon as the Seller may deem appropriate. Customer will execute and deliver a financing statement covering the terms of this security agreement if requested by Seller at the time of the execution of this agreement.

18.  No loss, injury, damage or destruction of the Goods being sold hereunder shall release the Customer from the Customer's obligations. No exceptions.

19.  Equipment is to remain exclusively at delivered address as per other side of this agreement. Should equipment be moved from location delivered to, equipment is missing and will be reported as same to local police department as stolen equipment/property of Seller.

20.  All Customer shipped equipment is F.O.B. common carrier or other & buyer releases ACE Restaurant Supply LLC of any and all delays, claims, losses and damages.

Fax to: 610-683-0777

**Ace Restaurant Supply, LLC.**

2100 North 11th Street
Reading, PA 19604

Corrected
Invoice

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/16/2010 | 0147 |

**Bill To**

Simmeria Cafe & Bistro, Inc.
15019 Kutztown Road
Kutztown, PA 19530

**Ship To**

24 East Main Street
Fleetwood, PA 19522

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|-------------|-------|-----|------|-----|--------|---------|
| | | | 3/16/2010 | | | |

| Quantity | Item Code | Description | Price Each | Amount |
|----------|-----------|-------------|------------|--------|
| 1 | 701 | Castle Bake Oven w/ wire rack & stone on bottom shelf | 2,960.00 | 2,960.00 |
| 1 | 701 | APW Hot Dog Roller Grill | 779.00 | 779.00 |
| 1 | 701 | APW Acrylic Roller Cover | 170.00 | 170.00 |
| 1 | 701 | Round Up Bun Steamer | 499.00 | 499.00 |
| | | Sales Tax | 6.00% | 264.48 |

| | |
|---|---|
| **Total** | $4,672.48 |

# Exhibit C

**Joseph A. O'Keefe, Esq.**[+][±]
jokade@aol.com

**James E. Sher, Esq.**[+]
jsheresq@okeefesher.com

± LL.M. Trial Advocacy
+ Admitted before the
U.S. District Court for
the Eastern District of PA

≠ Admitted before the
U.S. District Court for
the Middle District of PA

# O'KEEFE & SHER, P.C.
## ATTORNEYS AT LAW

**Richard D. Adamson, Esq.**[+]
rich@okeefesher.com

**Konrad B. Jarzyna, Esq.**[+]
konrad@okeefesher.com

Ph  610.683.0771
Fx  610.683.0777

May 20, 2010

***VIA CONFIRMED FACSIMILE &***
***POSTAGE PREPAID, FIRST CLASS***
***UNITED STATES MAIL and CONSTABLE***

Ace Restaurant Supply
2100 N. 11th Street
Reading, PA 19604

In Re: *Simmeria Café & Bistro, Inc.*

Dear Sirs:

I write to confirm the content of my conversation with you earlier today. I expect that all items I have purchased for Simmeria shall be delivered Tuesday, May 25, 2010, with my brother, Charles F. O'Keefe, Jr., receiving a complete listing of all items that you will be delivering not later than the close of business Friday, May 21, 2010. Alternatively, as you have been unable to give a straight answer as to when certain paid for items will be "in the store," we expect a complete refund not later than the close of business Monday, May 24, 2010 -- again with my brother receiving a complete itemization (including an accounting of the credit we are owed) not later than the close of business Friday, May 21, 2010.

Our relationship has come to this because over the course of the past month, I have become increasingly concerned with our inability to get: A) regular, returned phone calls; B) a straight answer without double talk and total vagaries; or C) a firm delivery date for everything we have purchased. Indeed, during the last conversation I had, Korey not only became belligerent, he attempted to blame us for ordering additional items the last week of April *without any consideration that he personally affirmed to my brother and I that EVERYTHING we were ordering would be ready and deliverable within 7-9 days* – that deadline is now all but 3 weeks past. Additionally, the oven in question was paid for April 4th and we were told it would take 12 to 15 (April 19th) days to manufacture. This time frame has past (including conversations with office personnel today May 20th) without even being able to get a best guess given to us as to delivery date. We have also learned that despite me repeatedly discussing with Korey that I was relying on his expertise (and his assurances that he would make sure we had the exact equipment we need), there are "concerns" with some of the equipment he selected for us – including, but not limited to, providing us with incomplete set-ups for the steamer and

the dishwasher. And, now, with a chef scheduled to start June 1, (again something Korey knew when the subject items were ordered), we don't have THE most essential items for our kitchen.

At this time, I am willing to just walk away if, and only if, you immediately meet either of the terms outlined above. But, should Korey, as he has done repeatedly over the past month, choose to ignore this, fail to specifically comply with my request(s), or again attempt to respond with more doubletalk and vagaries, please note what I do and that I shall immediately put into motion all resources available to me to obtain the fullest relief I am entitled to under law. I want to be very specific. Either confirm that you will deliver everything I was promised, and that I have paid for in full, not later than Tuesday, or provide me with a complete refund not later than the close of business Monday – confirming specifically with my brother your intent not later than the close of business tomorrow, or I shall do what is necessary to obtain complete satisfaction. I am thoroughly frustrated and strongly suggest that the games and smart-ass approach we have faced cease immediately. The choice is yours and I respectfully suggest you weigh the consequences of more of the same in this matter very carefully.

We look forward to hearing from you not later than the close of business Friday, May 21, 2010.

Sincerely,

/s/ Joseph O'Keefe

Joseph A. O'Keefe

# Exhibit D

# ACE RESTAURANT SUPPLY LLC
## 2100 North 11th Street
## Reading, PA  19604
## 610-685-5464

**New & Choice Used
Equipment**

**Stainless Fire Hoods
Stainless Fixtures**

May 21, 2010

Sent Certified # 7005 0390 0004 5159 8105
Restricted Delivery & 1st Class USPS

Attorney Joe O'Keefe
O'Keefe & Sher, P.C.
15019 Kutztown Road
Kutztown, PA  19530

Dear Attorney O'Keefe:

In order to set the record straight, I reply in writing to you as a courtesy this time.  **Never** at any time during our conversation, meeting, and on site visit with you being present, did we ever discuss, negotiate, or agree by any means, that I would be your consultant or layout and design person.

Clearly, you are a customer who ordered equipment from Ace Restaurant Supply.  Your signed and dated Sales Agreement of 2/12/10 speaks for itself.

Many of your statements as contained in your 5/20/10 letter come as a complete surprise.  There is no reason for me to pick off each and every item that is either inaccurate or your attempt to put any blame on the wrong party.

You ordered, you paid, and we delivered everything except one small baking oven.  That is the fact of your entire sale dated 2/12/10.  Your business is very much appreciated.  Thank you.

Please keep in mind that without any reason, prior discussion, or even so much as a courtesy telephone call, "you just returned a 3 Bay Sink with faucet, 1 New 24" Castle Flattop Grill, and (2) New Infared Countertop ranges.

One day your persons decided that you need an open flame 4 burner countertop stove.  Same is on Common Carrier truck being delivered to Ace Restaurant Supply the next couple of days.  I would reference your signed and dated Sales Agreement, however, one doesn't exist.  Why does one not exist, you ask? Because up until your letter dated 5/20/10 I personally trusted you.

During this week of 5/10, we attempted to deliver to Simmeria Café & Bistro, Inc.your used 2 Box 5 Tap Beer System, Greasetrap,and Castle Char Broiler.  You state "No delivery, not now via telephone."

During one of your phone calls you asked where are the dishwasher racks?  Where are the steamer racks?  I explained to you, you would need to order these as your persons see fit due to varying sizes and construction.

Joe, each and every piece of equipment that you purchased was explained to you in the same manner of our day to day procedure.  Many questions you have or had would be handled by a Project Manager, a Project Coordinator, and a Hired Consultant and quite possibly by the Business Owner himself.  You are a lawyer and you sell your time. So do I.

Unrelated, but needing to be addressed during this opportunity, is my Son's purchase of a single family home in the Village of Shamrock I consulted with you as a lawyer and offered to pay for your services.  You told me I'm not charging you.  You take care of me and I'll take care of you.  Exactly what did you mean by that statement?  For in fact, your legal advise was that my "son can do any f ---ing thing he almost wants to do out there.  They really don't care."  I asked you about a conversion to a rooming house for Kutztown students.  You told me no problem amongst other comments.  Lo & below during the initial conversion, a Stop Work Order was placed on the property.  It is now being re-constructed into a single family residence whereby removing new multiple electric meters, new wiring, extensive interior framing, and the house now has unnecessary 200 amp service that was brought in specifically for a rooming house.

I am sorry Ace will be late in delivering (1) one piece of the countertop equipment to the Simmeria Café & Bistro specifically a countertop baking oven of which has been ordered for you.

I did not send you a letter reference the facts and conversion in Shamrock.  I did not complain, call you up constantly or send you a letter putting you on notice for the financial losses sustained.  I do not recall putting in a claim with your E & O carrier for this sizeable loss and unnecessary expenditures.  You are in my opinion out of line with your letter of May 20, 2010.

We will make delivery to you upon receipt of the 4 burner stove with all prior ready to go equipment included.  There will be no refunds.  There will be no exceptions made reference to equipment purchases and all sales are final.  I trust you understand my position.

It is my personal desire to remain friendly with you, however, I am of the opinion you are frustrated and have had numerous obstacles during your entire construction project.  I/we were not in any way connected or involved with any portion of your entire project except the sale and delivery of said equipment.

We certainly have honored our commitment to you and will continue to do so to the best of our ability.  Once again, we do value your patronage and wish you much success with your new venture.

Sincerely yours,

ACE RESTAURANT SUPPLY, LLC

Korey Blanck
President

PS:  I will not be sending you a copy of the above by Constable.  I thought the delivery of your letter via Constable was a nice touch.

RETAIL                    DISTRIBUTION                    EXPORT                    FABRICATION

## <u>VERIFICATION</u>

I, Joseph A. O'Keefe, individually and as a President of Simmeria Café & Bistro, Inc., state and aver that the facts set forth in the foregoing Complaint are based on information furnished to counsel, which information has been obtained by counsel in the course of this lawsuit.

The language of the Complaint is that of counsel and not of the undersigned. The undersigned verifies that he has read the attached Complaint and that the facts set forth therein are true and correct to the best of his information and belief.

To the extent that the language of the Complaint is that of counsel, the undersigned has relied upon counsel in making this Verification. This Verification is made subject to the penalties relating to unsworn falsification to authorities.

Simmeria Café & Bistro, Inc.,

Dated: _2|23|11_

Joseph A. O'Keefe