IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH A. O'KEEFE ET AL. : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 11-1330 |
| ACE RESTAURANT SUPPLY, LLC, ET AL. : | |

## MEMORANDUM

**SURRICK, J.**                                                                                          **JANUARY  11 , 2016**

Presently before the Court is Defendants' Motion to Dismiss.  (ECF No. 6.)  For the following reasons, the Motion will be denied.

**I.     BACKGROUND**

Plaintiff Joseph O'Keefe is the owner of Plaintiff Simmeria Café & Bistro ("Simmeria").  Defendants Korey and Nick Blanck own Defendant Ace Restaurant Supply.  Ace sells bar and restaurant equipment in Pennsylvania as well as other states through its website.

In February 2010, O'Keefe called Korey Blanck and inquired about buying supplies for Simmeria, his new restaurant.  On February 12, 2010, Plaintiffs and Defendants executed a sales agreement for $20,602.16.[1]  (Compl. ¶ 15 & Ex. A, ECF No. 1.)  The agreement was faxed from Korey Blanck to O'Keefe.  Plaintiffs allege that they entered the contract based on false representations made by Korey Blanck and Ace's website that Defendants could provide Plaintiffs with their equipment needs.  On March 16, 2010, Plaintiffs and Defendants entered into another sales contract for equipment worth $4,672.48.  (*Id.* at ¶ 16 & Ex. B.)  Plaintiffs paid

---

[1] In addition to the pleadings, courts may consider exhibits attached to the complaint when ruling on a motion to dismiss.  *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

Defendants $35,803.62 in advance, an amount which presumably includes additional fees not itemized in the Complaint.

After Plaintiffs made their payment, the "true face of [Defendants'] operation began to unravel." (*Id.* at ¶ 17.) Defendants failed to deliver a grill and an oven that Plaintiffs ordered. Plaintiffs unsuccessfully pressed Defendants with regard to the whereabouts of their purchases. Defendants either ignored Plaintiffs' calls or responded with dishonest excuses. For instance, in March and April 2010, Korey Blanck repeatedly assured O'Keefe that he had ordered the oven and that the manufacturer was at fault for the delay. O'Keefe then called the manufacturer and was told that Defendants had never ordered the oven. (*Id.* at ¶ 21.) When Defendants did make deliveries, they shipped equipment that was both broken and useless. Plaintiffs allege that Defendants were aware that the equipment failed to meet their needs, but nonetheless proceeded with the deliveries in an attempt to defraud them. (*Id.* at ¶ 22.)

On May 20, 2010, O'Keefe sent a letter demanding that Defendants either deliver all of the missing and broken equipment or refund the money. (*Id.* at ¶ 23 & Ex. C.) The next day, Korey Blanck responded with a letter in which he disputed O'Keefe's portrayal of their business transactions and refused to refund any money.[2] (*Id.* at ¶ 24 & Ex. D.)

Plaintiffs claim that Defendants' deceitful behavior was characteristic of the way they conducted business. (*Id.* at ¶ 27.) Plaintiffs allege in their Complaint that Defendants regularly made fraudulent misrepresentations regarding equipment that they never intended to deliver. In

---

[2] A reading of the letters reveals a personal and strained relationship between Blanck and O'Keefe. Blanck references incidents in which he consulted with O'Keefe as a lawyer on matters unrelated to the instant litigation. Blanck notes that he was dissatisfied with the advice he received, but unlike O'Keefe, did not pepper him with follow-up complaints and letters. (Compl. Ex. D.)

Plaintiffs' Response to Defendants' Motion, they attach several state court complaints filed against Defendants that allege similar conduct. (Pls.' Resp. Exs. A-B, ECF No. 8.) We will consider these matters of public record as part of the pleadings.[3] Plaintiffs submit a complaint filed in the Court of Common Pleas of Berks County alleging that Defendant Ace misrepresented the character of a fryer that the plaintiff in that action bought from Ace. (*Id.* Ex. A.) The plaintiff in that litigation purchased the fryer on September 16, 2009. Plaintiffs file another state court complaint against Defendants, alleging that on June 20, 2008, the plaintiffs in that matter entered a sales agreement with Defendants to purchase certain restaurant supplies. (*Id.* Ex. B at ¶ 7.) The plaintiffs there alleged that Defendants breached the contract and committed fraud by failing to deliver and install the items in the agreement.

On February 25, 2011, Plaintiffs filed a Complaint against Defendants alleging a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Count I), a RICO conspiracy claim, *id.* § 1962(d) (Count II), and state law claims of fraud (Count III), unjust enrichment (Count IV), intentional misrepresentation (Count V), and negligent misrepresentation (Count VI). Plaintiffs also seek declaratory relief (Count VII).

---

[3] Two competing rules guide our decision to consider these documents. Courts in this district follow the general rule that a complaint may not be amended by briefs in opposition to a motion to dismiss. *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988); *Parastino v. Conestoga Tel.*, No. 99-679, 1999 WL 636664, at *2 (E.D. Pa. Aug. 18, 1999). On the other hand, courts may consider matters of public record in ruling on a motion to dismiss. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Defendants argue that the factual allegations in the Complaint regarding Defendants' other unspecified victims are too vague to support a RICO claim. Plaintiffs attempt to rebut this argument and cure the deficiencies in their Complaint by appending state court complaints to their Response. We will accept the attached exhibits as part of the pleadings. *See Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993) (treating public documents attached to an opposition to a motion to dismiss as part of the pleadings).

Defendants responded with the instant Motion to Dismiss.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

Defendants seek dismissal of the Complaint on two grounds. Defendants argue that Plaintiffs fail to plead mail and wire fraud—the predicate acts of Plaintiffs' RICO claims—with sufficient particularity. Defendants also contend that Plaintiffs do not allege a "pattern of racketeering activity." Were we to dismiss Plaintiffs' RICO claims, we would lack jurisdiction to entertain Plaintiffs' state law claims.

In Count I of the Complaint, Plaintiffs allege that Defendants violated 18 U.S.C. § 1962(c). To plead a violation of § 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Kolar v. Preferred Real Estate Invs.'s, Inc.*, 361 F. App'x 354, 362 (3d Cir. 2010) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473

4

U.S. 479, 496 (1985)).  A pattern of racketeering activity requires at least two predicate acts of racketeering that "are related and that amount to or pose a threat of continued criminal activity." *Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, 87 F. App'x 227, 231 (3d Cir. 2003) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).  Predicate acts of racketeering include federal mail fraud, 18 U.S.C. § 1341, and federal wire fraud, *id.* § 1343. *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004) (citing 18 U.S.C. § 1961(1)).

Where a plaintiff asserts a RICO violation that stems from the predicate acts of mail and wire fraud, the plaintiff must plead fraud with particularity pursuant to Rule 9(b).  *Banks v. Wolk*, 918 F.2d 418, 422 n.1 (3d Cir. 1990); *Devon IT, Inc. v. IBM Corp.*, No. 10-2899, 2011 WL 1331888, at *8 (E.D. Pa. Mar. 31, 2011); *Walther v. Patel*, No. 10-706, 2011 WL 382752, at *3 (E.D. Pa. Feb. 4, 2011).  Plaintiffs may satisfy this burden by pleading the "date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Lum*, 361 F.3d at 224 (internal quotation marks and citations omitted).

### A. Predicate Acts

Plaintiffs allege that Defendants committed mail and wire fraud as the predicate acts of their RICO violation.  (Compl. ¶¶ 49-50).  To plead mail or wire fraud, a plaintiff must show (1) a scheme to defraud, (2) use of the mail or interstate wires to further that scheme, and (3) fraudulent intent.  *Bonavitacola*, 87 F. App'x at 231.  The communication made through the mails and wires does not have to be a necessary element of the fraudulent scheme, but it must at least be "incident to an essential part of the scheme." *Tabas v. Tabas*, 47 F.3d 1280, 1294 n.18 (3d Cir. 1995) (citations omitted).  The scheme must involve a "fraudulent misrepresentation or

omission reasonably calculated to deceive persons of ordinary prudence and comprehension." *Walther*, 2011 WL 382752, at *6 (quoting *Lum*, 361 F.3d at 223 (citations omitted)).

Plaintiffs' allegations regarding the predicate RICO violations are sufficient to withstand this Motion. Accepting Plaintiffs' averments as true, Plaintiffs allege that Defendants used the mails and interstate wires to perpetrate the fraudulent transaction. They identify the dates that the sales agreements were faxed and consummated, as well as the dates of mailings between O'Keefe and Korey Blanck. Defendants' use of the wires and mails was therefore a necessary element of the overall scheme. Plaintiffs also state with particularity the date, identity of the speaker, and the content of misrepresentations made by Blanck. In March and April 2010, during numerous telephone conversations, Blanck assured O'Keefe that he had ordered Plaintiffs' oven for delivery and that the manufacturer was responsible for the delay. O'Keefe contacted the manufacturer to confirm or dispel the veracity of this representation and was informed that Defendants had never ordered the oven. This allegation suggests that Defendants made representations knowing of their falsity and intending to deceive Plaintiffs. These averments also support Plaintiffs' contention that Defendants entered the sales agreement knowing that they could not, or would not, deliver on the promised services.

Courts consistently reject contract and tort claims brought under the guise of RICO. *See, e.g.*, *Kolar*, 361 F. App'x at 363 ("These allegations set forth disputes sounding in contract. Kolar cannot successfully transmute them into RICO claims by simply appending the terms 'false' and 'fraudulent.'" (citation omitted)); *Walther*, 2011 WL 382752, at *6 ("[T]hat complaint sounds in negligence or breach of contract, and Walther cannot convert it to fraud by labeling the statement a 'misrepresentation.'" (citation omitted)). However, "RICO is to be read broadly,"

*Sedima*, 473 U.S. at 497, and notwithstanding Defendants' argument to the contrary, RICO "may be applicable to many 'garden-variety' fraud cases," *Tabas*, 47 F.3d at 1296. Plaintiffs here do not merely refashion a contract dispute. Instead, they allege misrepresentations made by Korey Blanck that evince a scheme to defraud.

### B. Pattern of Racketeering Activity

A pattern of racketeering activity requires two or more predicate acts of racketeering within a ten-year period. 18 U.S.C. § 1961(5). A plaintiff must show that the "racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc.*, 492 U.S. at 239 (emphasis in original).

The predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240. "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. Closed-ended continuity refers to a "series of related predicates extending over a substantial period of time." *Id.* at 242. The Third Circuit has held that conduct lasting less than twelve months does not establish closed continuity. *Tabas*, 47 F.3d at 1293 (citing cases). Where the predicate acts occur close together in time, a plaintiff may prove open-ended continuity by showing that the commission of the acts is the entity's "regular way of doing business" or that the "racketeering acts themselves include a specific threat of repetition extending indefinitely into the future." *See H.J. Inc.*, 492 U.S. at 242.

Defendants argue that Plaintiffs have, at most, alleged one incident of fraud concerning the purchase of restaurant equipment in February and March 2010. Under the relatedness

analysis, however, each use of the mails or wires constitutes a distinct violation of the mail and wire fraud statutes, even if the violations were part of the same fraudulent scheme. *Walther*, 2011 WL 382752, at *8 n.102. Plaintiffs and Defendants communicated with respect to the sales agreement by mail, telephone, and facsimile on numerous occasions. These separate violations are sufficiently related because they had the same purpose, result, participants and victim. *See Banks*, 918 F.2d at 422 (finding relatedness prong satisfied where scheme involved a single real estate transaction); *Walther*, 2011 WL 382752, at *8 (finding relatedness where fraud involved a single loan transaction).

  Defendants maintain that Plaintiffs have failed to establish continuity. Defendants' argument only addresses the allegations in the Complaint. If we confined our analysis to the Complaint, we would agree with Defendants. Plaintiffs neither identify any victims by name nor cite any other lawsuits lodged against Defendants. They neglect to provide factual details to support their bald assertion that the Defendants' predicate fraud was their regular way of doing business, rather than an isolated occurrence. As discussed above, however, Plaintiffs attach numerous state court complaints to their Response, which we accept as part of the pleadings. Defendants have not filed a Reply. Defendants' argument, therefore, does not respond to the entirety of Plaintiffs' allegations regarding continuity.

  We are satisfied that Plaintiffs sufficiently plead continuity. Plaintiffs submit two previous state court complaints filed against Defendants by other purchasers of Defendants' products. (Pls.' Resp. Exs. A-B.) These cases allege misrepresentations and fraud in connection with the sale of Defendants' restaurant equipment dating back to 2008. The similar conduct alleged in all of the actions brought against Defendants are sufficient to demonstrate, for

purposes of this Motion, that the commission of fraud was Ace's regular way of doing business. These facts support open-ended continuity. *Cf. Walther*, 2011 WL 382752, at *8 (finding no continuity where plaintiff did not allege that defendants perpetrated the predicate acts against anyone besides the plaintiff); *Holst v. Oxman*, No. 05-0220, 2006 WL 724520, at *5 (E.D. Pa. Mar. 17, 2006) (same). Although the state court complaints do not allege mail or wire fraud, Plaintiffs plead at least two predicate acts in the instant matter, and the facts asserted in all three cases depict Ace as an entity that repeatedly defrauds those with whom it deals. *See Tabas*, 47 F.3d at 1293 (finding continuity would exist where a "legitimate" businessperson regularly conducts his or her business through illegitimate means). Plaintiffs also adequately plead closed-ended continuity because the alleged fraud lasted longer than twelve months. *Darocha v. Crusader Sav. Bank*, No. 94-7264, 1995 WL 118208, at *2 (E.D. Pa. Mar. 10, 1995). Accordingly, Plaintiffs' allegations regarding continuity and a pattern of racketeering survive Defendants' Motion.

IV.  **CONCLUSION**

For the foregoing reasons, Defendants' Motion will be denied.

An appropriate Order follows.

BY THE COURT:

_____
**R. BARCLAY SURRICK, J.**