IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH A. O'KEEFE, ET AL.          :
                                    :         CIVIL ACTION
        v.                          :
                                    :         NO. 11-1330
ACE RESTAURANT SUPPLY, LLC,         :
ET AL.                              :

# MEMORANDUM

**SURRICK, J.**                                              **MARCH  27 , 2017**

Presently before the Court is Plaintiffs' Combined Motion and Memorandum to Disqualify James Christopher Froelich, Esq. from Representing Defendants at Trial. (ECF No. 32.) After review of Plaintiffs' Combined Motion and Memorandum, Defendants' Memorandum of Law in Opposition thereto (ECF No. 36), and the applicable law, Plaintiffs' Motion will be denied.

## I.   BACKGROUND

### A.   Factual Background

The relevant factual background to this case was put forth in our January 11, 2016 Memorandum and Order denying Defendants' Motion to Dismiss. (ECF No. 12.) Plaintiff Joseph O'Keefe is the owner of Plaintiff Simmeria Café & Bistro ("Simmeria"). Defendants Korey and Nick Blanck own Defendant Ace Restaurant Supply. Ace sells bar and restaurant equipment in Pennsylvania as well as other states through its website.

In February 2010, O'Keefe called Korey Blanck and inquired about buying supplies for Simmeria, his new restaurant. On February 12, 2010, Plaintiffs and Defendants executed a sales agreement for $20,602.16. (Compl. ¶ 15; Ex. A, ECF No. 1.) The agreement was faxed from

Korey Blanck to O'Keefe.  Plaintiffs allege that they entered into the contract based on false representations made by Korey Blanck and Ace's website that Defendants could provide Plaintiffs with their equipment needs.  On March 16, 2010, Plaintiffs and Defendants entered into another sales contract for equipment worth $4,672.48.  (*Id.* ¶ 16; Ex. B.)  Plaintiffs made a total payment to Defendants of $35,803.62 in advance, an amount which presumably includes additional fees not itemized in the Complaint.

Plaintiffs allege that after they made this payment, the "true face of [Defendants'] operation began to unravel."  (*Id.* ¶ 18.)  Defendants failed to deliver a grill and an oven that Plaintiffs ordered.  Plaintiffs unsuccessfully pressed Defendants with regard to the whereabouts of their purchases.  Defendants either ignored Plaintiffs' calls or responded with dishonest excuses.  For instance, in March and April 2010, Korey Blanck repeatedly assured O'Keefe that he had ordered the oven and that the manufacturer was at fault for the delay.  O'Keefe then called the manufacturer and was told that Defendants had never ordered the oven.  (*Id.* ¶ 21.)  When Defendants did make deliveries, they shipped equipment that was broken and useless.  Plaintiffs allege that Defendants were aware that the equipment failed to meet their needs, but nevertheless proceeded with the deliveries with the intent to defraud them.  (*Id.* ¶ 22.)

On May 20, 2010, O'Keefe sent a letter demanding that Defendants either deliver all of the missing and broken equipment or refund the money.  (*Id.* ¶ 23; Ex. C.)  The next day, Korey Blanck responded with a letter in which he disputed O'Keefe's portrayal of their business transactions and refused to refund any money.[1]  (Compl. ¶ 24; Ex. D.)

---

[1] A reading of the letters reveals a personal and strained relationship between Blanck and O'Keefe.  Blanck references incidents in which he consulted with O'Keefe as a lawyer on matters unrelated to the instant litigation.  Blanck notes that he was dissatisfied with the advice he received, but unlike O'Keefe, he did not follow-up with complaints and letters.  (Compl. Ex. D.)

Plaintiffs claim that Defendants' deceitful behavior was characteristic of the way they conducted business. (*Id.* ¶ 27.) Plaintiffs allege in their Complaint that Defendants regularly made fraudulent misrepresentations regarding equipment that they never intended to deliver. In Plaintiffs' Response to Defendants' Motion to Dismiss, they attached two state court complaints filed against Defendants that allege similar conduct. (Pls.' Resp. Exs. A-B, ECF No. 8.) We considered these public records as part of the pleadings. One of the complaints was filed in the Court of Common Pleas of Berks County, and alleges that Defendant Ace misrepresented the character of a fryer that the plaintiff in that action bought from Ace. (*Id.* at Ex. A.) The plaintiff in that litigation had purchased the fryer on September 16, 2009. The other state court complaint against Defendants alleged that on June 20, 2008, the plaintiffs in that matter entered into a sales agreement with Defendants to purchase certain restaurant supplies. (*Id.* at Ex. B ¶ 7.) The plaintiffs there alleged that Defendants breached the contract and committed fraud by failing to deliver and install the items in the agreement.

### B.     Procedural History

On February 25, 2011, Plaintiffs filed a Complaint against Defendants alleging a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Count I), a RICO conspiracy claim, *id.* § 1962(d) (Count II), and state law claims of fraud (Count III), unjust enrichment (Count IV), intentional misrepresentation (Count V), and negligent misrepresentation (Count VI). Plaintiffs also sought declaratory relief (Count VII).[2]

---

[2] Other motions and responses not at issue here were also filed and disposed of by this Court. They are as follows: On March 23, 2011, Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 6.) On April 4, 2011, Plaintiffs filed their Response in Opposition to Defendants' motion to dismiss. (ECF No. 8.) On May 17, 2011, Plaintiffs filed their motion for joinder. (ECF No. 9.) On June 15, 2011, Defendants filed an opposition to plaintiffs' motion for joinder. (ECF No. 10.) This Court denied Defendants' motion to dismiss on January 11, 2016 (ECF Nos. 12-14), and denied Plaintiffs' motion for joinder on January 12, 2016 (ECF No. 15). Defendants filed respective answers to Plaintiffs' Complaint on January 31,

On December 29, 2016, Plaintiffs filed the instant Motion to Disqualify Counsel, James Christopher Frelich, Esq. (Pls.' Mot., ECF No. 32.) That same day, Defendants filed motions in limine to preclude any and all evidence of actions filed against Defendants. (ECF Nos. 33-34.) On January 16, 2017, Defendants filed their Response in Opposition to Plaintiffs' motion in limine. (ECF No. 35.) On January 18, 2017, Defendants filed their Response in Opposition to Plaintiffs' Motion to Disqualify Counsel. (Defs.' Resp., ECF No. 36.)

## II.   LEGAL STANDARD

Rule 83.6 of the Local Rules of Civil Procedure for the Eastern District of Pennsylvania provides the Rules of Attorney Conduct. Rule IV(B) provides, *inter alia*, that "[t]he Rules of Professional Conduct adopted by this court are the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania." Under these rules, the court has the authority to disqualify counsel if the facts of the particular case suggest that disqualification is necessary to enforce the intended goal of the applicable disciplinary rule. Of course, "[t]he district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before it." *Adeniyi-Jones v. State Farm Mut. Auto. Ins. Co.*, No. 14-7101, 2016 WL 3551486, at *2-3 (E.D. Pa. June 30, 2016) (internal quotation marks omitted); *see United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980) (citing *Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385-86 (3d Cir. 1972)). However, a motion to disqualify counsel should be granted "only when [the Court] determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule." *Reg'l*

---

2016. (ECF Nos. 16-17.) On May 3, 2016, this Court referred this matter to arbitration pursuant to Rule 53.2 of the Local Rules of Civil Procedure for the Eastern District of Pennsylvania. (ECF No. 22.) An arbitration award of $75,823.92 in damages was entered in favor of Plaintiffs on June 8, 2016. (ECF No. 23.) Defendants requested a trial de novo on July 11, 2016. (ECF No. 24.)

*Employers' Assur. Leagues Voluntary Employees' Beneficiary Ass'n Trust v. Castellano*, No. 03-6903, 2009 WL 1911671, at *2 (E.D. Pa. July 1, 2009) (quoting *Miller*, 624 F.2d at 1201).  In making such a determination, the district court "should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions." *Id*.  Even if a court finds that an attorney violated a disciplinary rule, however, "disqualification is never automatic." *Id*.  In fact, motions to disqualify are unusual and are generally disfavored given that they seek to deprive parties of their choice of counsel and may be motivated by improper tactical considerations.  *Cipressi v. Bristol Borough*, No. 10-1584, 2012 WL 606687, at *2 (E.D. Pa. Feb. 27, 2012); *Wolf, Block, Schorr & Solis–Cohen LLP*, No. 05-6038, 2006 WL 680915, at *1 (E.D. Pa. Mar. 9, 2006) ("[M]otions to disqualify opposing counsel are disfavored . . . not only because disqualification robs one's adversary of her counsel of choice, but also because of the risk . . . that one could subvert the ethical rules in an attempt to use them as a procedural weapon.") (citations omitted); *Capriotty v. Bell*, No. 89-8609, 1991 WL 22134, at *2 (E.D. Pa. Feb.19, 1991) (citing *Hamilton v. Merrill Lynch*, 645 F. Supp. 60, 61 (E.D. Pa. 1986)).  *Cf. Martin v. Turner*, No. 10-1874, 2011 WL 717682, at *2 (E.D. Pa. Feb. 18, 2011) ("The Code of Professional Responsibility is applied to deter professional misconduct, and to preserve the profession's standing in the community - it was not intended as an addition to the depressingly formidable array of dilatory strategies already part of the litigator's arsenal.") (internal quotation marks and citation omitted).

     It is well settled in this District that disqualification is "an extreme sanction that should not be imposed lightly." *Castellano*, 2009 WL 1911671, at *2 (internal quotation marks omitted); *Cf. Wyeth v. Abbott Labs.*, 692 F. Supp. 2d 453, 457 (D.N.J. 2010) ("[D]isqualification

is considered a drastic measure which courts should hesitate to impose except when absolutely necessary.") (internal quotation marks and citations omitted); *Shade v. Great Lakes Dredge & Dock Co.*, 72 F. Supp. 2d 518, 520 (E.D. Pa. 1999) (same).  The party seeking to disqualify opposing counsel bears the burden of clearly showing that continued representation would be impermissible and that disqualification is "necessary." *Cohen v. Oasin*, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994) (citing *Commercial Credit Bus. Loans, Inc. v. Martin*, 590 F. Supp. 328, 335-36 (E.D. Pa. 1984)).  Vague and unsupported allegations are insufficient to meet this burden.  *Id.* Rather, "disqualification ordinarily is the result of a finding that a disciplinary rule prohibits an attorney's appearance in a case."  *Miller*, 624 F.2d at 1201 (citations omitted).

### III. DISCUSSION

Plaintiffs seek to disqualify Attorney Froelich pursuant to Rule 3.7 of the Pennsylvania Rules of Professional Conduct.  Rule 3.7 provides that:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
>    (1) The testimony relates to an uncontested issue;
>
>    (2) The testimony relates to the nature and value of legal services rendered in the case; or
>
>    (3) Disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Pa. R. Prof'l C. 3.7.

A witness will be deemed "necessary" when he "has crucial information in his possession which must be divulged" and when that information is relevant and not protected by any privilege.  *See Roberts v. Ferman*, No. 09-4895, 2011 WL 4381128, at *2 (E.D. Pa. Sept. 16,

2011); *W. Lewis Frame n Door, Inc. v. C & C Const. & Rehab. Specialist, Inc.*, No. 98-1281, 1999 WL 79502, at *1 (E.D. Pa. Feb. 4, 1999). Where the information possessed by a witness can be obtained elsewhere or is cumulative, the court will not consider that witness to be "necessary." *Cipressi*, 2012 WL 606687, at *3.

Comment 4 to Pa. R.P.C. 3.7 states as follows:

> a balancing is required between the interests of the client and those of the tribunal and the opposing party. Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness. The conflict of interest principles stated in Rules 1.7, 1.9 and 1.10 have no application to this aspect of the problem.

Pa. R. Prof'l C. 3.7, cmt. 4.

Courts within this Circuit have identified four factors a court must consider before permitting the deposition of an opposing party's attorney.[3] The factors are: "(1) whether the information sought is relevant to a major issue in the case; (2) no other means for obtaining the relevant information exists; (3) the need for the information outweighs the inherent risks of deposing opposition counsel; and (4) the information sought is not privileged."[4] *Advance Power Sys., Inc. v. Hi-Tech Sys., Inc.*, No. 90-7952, 1993 WL 30067, at *1 (E.D. Pa. Feb. 4, 1993) (citations omitted); *United States v. Educ. Mgmt. LLC*, No. 07-00461, 2014 WL 1391142, at *1 (W.D. Pa. Feb. 24, 2014), *report and recommendation adopted*, No. 07-461, 2014 WL 1391179

---

[3] While the cases cited involved the depositions of opposing counsel, not the calling of opposing counsel as a trial witness, these factors are instructive.

[4] Comment 3 to Rule 1.6 states that "[t]he attorney-client privilege . . . appl[ies] in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client." Pa. R. Prof'l C. 1.6.

(W.D. Pa. Apr. 9, 2014); *Curiale v. Tiber Holding Corp.*, No. 95-5284, 1997 WL 786446, at *1 (E.D. Pa. Dec. 2, 1997).

Plaintiffs contend that Attorney Froelich is a necessary witness in this case "to discuss the claims and outcomes of the various cases against the Blancks and confirm the identical nature of claims to those herein, as well as the on-going nature of the Blancks' illegal enterprise." (Pls.' Mot. 1, Ex. A.) Plaintiffs also state that Froelich's testimony is

> essential to demonstrate plainly, that the factual allegations of each of the state court complaints considered by the Court in its January 11, 2016 Memorandum are nearly identical to those contained within this matter; that at least two previous state court complaints against Defendants filed by other purchasers of Defendants' products (as referenced in the Court's January 11, 2016 Memorandum) . . . allege misrepresentations and fraud in connection with the sale of Defendants' restaurant equipment dating back to 2008; and the recent complaints against the Blanck's [sic] pawnshop similarly allege fraud and other illegal actions on the part of the Enterprise.

(Pls.' Mot. 1-2.)

Defendants argue that Plaintiffs can obtain the requested information "from the persons with firsthand knowledge of the events alleged in the state court complaints." (Defs.' Resp. 3.) We agree. Although Attorney Froelich represented Defendants in various state court proceedings, the individuals who filed these lawsuits were intimately involved in those cases. Clearly, they could better supply the information that Plaintiffs seek.[5] Indeed, seeking testimony from other individuals aside from Attorney Froelich would avoid the hardship Defendants will inevitably suffer if Attorney Froelich, their long-time counsel, is required to withdraw from the

---

[5] We note that Defendants contend that the testimony Plaintiffs seek from Froelich addressing the nature of the state court complaints "are . . . mere allegations without any proof thereof," which Plaintiffs seek because they have failed "to develop any actual admissible evidence of the allegations contained within the state court complaints." (Defs.' Resp. 4.)

8

case. Moreover, the testimony of Froelich would almost certainly involve the disclosure of privileged information.

We must balance Plaintiffs' need for Attorney Froelich's testimony against the potential hardship that it would cause to Defendants. Plaintiffs argue that requiring Froelich to withdraw from this matter would not cause Defendants significant hardship since Defendants had been on notice for almost one year that Attorney Froelich could be called as a witness. (Pls.' Mot. 3.) Defendants argue they would suffer a hardship if Attorney Froelich were required to withdraw as counsel, since they would "have to retain new counsel at the doorstep of trial." (Defs.' Resp. 3.) Attorney Froelich represented Defendants during the state court proceedings, as well as at all phases of the instant litigation, and he has spent significant time and expended substantial resources preparing this case. Replacing him would require Defendants to obtain replacement counsel who would have no knowledge of this matter. This would significantly delay trial. Requiring Attorney Froelich to withdraw would impose a substantial hardship on Defendants.

The parties acknowledge that it could have been foreseen that Attorney Froelich might be called as a witness in this matter as early as April 2016, when Plaintiffs provided their initial disclosures to Defendants. However, neither party brought this concern to the Court until the instant motion. Moreover, neither Plaintiffs nor Defendants raised this issue at the time of the June 8, 2016 arbitration trial.[6]

Under Rule 3.7, after balancing the potential hardship to Defendants against the possible harm to Plaintiffs, Defendants' hardship far outweighs any harm Plaintiffs may suffer.

---

[6] As discussed *supra*, Comment 4 to the Pennsylvania Rules of Professional Conduct instructs that "[i]t is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness." Pa. R. Prof'l C. 3.7, cmt. 4. Plaintiffs reasonably foresaw that Attorney Froelich would be a witness and chose to not act.

Finally, we agree with Defendants that Plaintiffs' reliance on *Universal Athletic Sales Co. v. American Gym, Recreational & Athletic Equipment Corp., Inc.*, 546 F.2d 530 (3d Cir. 1976) is misplaced. In *Universal*, the attorney that counsel sought to disqualify planned to testify as an expert witness on behalf of his client. 546 F.2d at 538. Here Plaintiffs seek to elicit testimony from *opposing counsel*, not from their own attorney. *Universal* does not apply here.

Under the totality of the circumstances, the hardship imposed on Defendants by Froelich's testimony far outweighs the need for him to personally testify about his knowledge of Defendants' state court proceedings. Moreover, the testimony Plaintiffs seek could be elicited from an alternative source. Finally, Froelich's testimony may well involve privileged information. For all of these reasons, he will not be disqualified as Counsel for Defendant.

## IV. CONCLUSION

Plaintiffs' Motion to Disqualify will be denied.

                                                **BY THE COURT:**

                                                _____
                                                **R. BARCLAY SURRICK, J.**