**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH A. O'KEEFE, et al., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| | : | |
| v. | : | No.: 11-cv-1330 |
| | : | |
| ACE RESTAURANT SUPPLY, LLC., et al., | : | |
| Defendants. | : | |

## MEMORANDUM

SITARSKI, M. J.                                                                February 27, 2019

Plaintiff Joseph O'Keefe ("Plaintiff") alleges that Defendants Ace Restaurant Supply, LLC; Korey Blanck; and Nicholas Blanck (collectively, "Defendants") have committed various frauds and knowingly failed to provide contracted-for pieces of kitchen equipment for his new restaurant. Following a bench trial and pursuant to Federal Rule of Civil Procedure 52(a), this Court now issues its findings of fact and conclusions of law. For the following reasons, the Court finds for all Defendants on Counts I and II, respectively asserting violations of the RICO Statute, 18 U.S.C. §§ 1962(c), (d). The Court finds for Defendant Nicholas Blanck on all Counts. The Court finds for Plaintiff against Defendant Korey Blanck and Defendant Ace Restaurant Supply, LLC, on Plaintiff's Counts III, IV, V, and VI, asserting state law claims of fraud, unjust enrichment, and negligent misrepresentation.

## I.        PROCEDURAL BACKGROUND

On February 28, 2011, Plaintiff filed the instant Complaint in the United States District Court for the Eastern District of Pennsylvania. (Pl.'s Compl., ECF No. 1). Plaintiff alleged a violation of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Count I); a RICO conspiracy claim, *id.* § 1962(d) (Count II); and additional

state law counts of fraud (Count III); unjust enrichment (Count IV); intentional misrepresentation (Count V); and negligent misrepresentation (Count VI). (*Id.* at ¶¶ 12-109). Defendants responded to the Complaint with a Motion to Dismiss filed pursuant to Rule 12(b)(6) (Defs.' Mot. Dismiss, ECF No. 6), which the Honorable R. Barclay Surrick denied. (Mem. & Op., ECF No. 12; Order, ECF No. 13).

On January 31, 2016, Defendants filed their Answers to Plaintiff's Complaint. (Defs.' Answers, ECF Nos. 16, 17). Subsequently, the case was referred to the Court's arbitration program. (Order, ECF No. 22). The arbitration was held on June 8, 2016, before a three-arbitrator panel. (Not. of Hr'g, ECF No. 20; *see also* ECF No. 23). Following the arbitration, Defendants filed a request for trial de novo (ECF No. 24), and Plaintiff filed a Motion to Strike Defendants' request for trial de novo. (Pl.'s Mot. Strike, ECF No. 25). On September 7, 2016, Judge Surrick denied Plaintiff's Motion to Strike the request. (Order, ECF No. 27).

After various motions and pretrial conferences (ECF Nos. 34-60), and upon consent of all parties, Judge Surrick transferred this matter to me by Order dated May 29, 2018. (Order, ECF No. 62). I held a bench trial on August 8, 2018. (Transcript, ECF No. 71). Plaintiff testified at trial, and called as witnesses Defendant Nicholas Blanck and Defendant Korey Blanck. Defendants called no witnesses. On October 5, 2018, the parties submitted their Proposed Findings of Fact and Conclusions of Law. (ECF Nos. 73, 74). The Court has reviewed the testimony, the parties' proposed findings of fact and conclusions of law, and the exhibits introduced at trial. Upon this record, which includes critical credibility findings, the Court makes its findings of fact and conclusions of law.

## II. FINDINGS OF FACT

To briefly summarize, Plaintiff testified that he entered into two contracts with Defendant Ace Restaurant Supply relying upon the fraudulent misrepresentations of Ace's President, Defendant Korey Blanck. Plaintiff testified that he did not receive the contracted-for items, nor did he receive any refund for the money he paid pursuant to those contracts. The Court credits Plaintiff's testimony. Defendants disagree with Plaintiff's version of events, and testified that they delivered the items to Simmeria as required under the contracts. The Court concludes that Defendants' testimony was not credible in many critical respects, as set forth below.

### A. The Parties

1. At the time of the events in question, Plaintiff Joseph O'Keefe was the president of Simmeria Café & Bistro ("Simmeria"), a restaurant located in Fleetwood, Pennsylvania, which he formed in the early part of 2010.

2. At the time of the events in question, Defendant Ace Restaurant Supply, LLC, was a business incorporated under the laws of Pennsylvania, with its principal place of business at 2100 North Eleventh Street, Reading, Pennsylvania 19604.

3. Defendant Korey Blanck is an adult individual with last known residential address at 750 Chestnut Street, Reading, Pennsylvania 19602. At the time of the events, Defendant Korey Blanck was the president, owner, and sole shareholder of Defendant Ace Restaurant Supply.

4. Defendant Nicholas Blanck is an adult individual, and Korey Blanck's son. He worked as an employee of Defendant Ace Restaurant Supply as a deliveryman. He was also tasked with cleaning up used restaurant equipment for delivery to customers.

### B. Background of the Instant Litigation: The February 12, 2010 Meeting

5. Plaintiff learned of Defendant Ace Restaurant Supply through a former law partner's friend, who informed Plaintiff he should contact Ace Restaurant Supply to equip Simmeria, and that Defendant Korey Blanck was "the guy to talk to." (Tr., 8/8/18, ECF No. 71, at 36:20-23).

6. Plaintiff contacted Defendant Korey Blanck and Ace Restaurant Supply to outfit Simmeria with restaurant equipment. On February 12, 2010, Defendant Korey Blanck went to Simmeria to meet with Plaintiff. (*Id.* at 10:11-14).

7.    Defendant Korey Blanck came to Simmeria and drew a diagram for Plaintiff, detailing the equipment Plaintiff needed.  Plaintiff credibly testified that Defendant Korey Blanck "sketched out what he was going to do.  He gave me the whole equipment list.  I mean, he really gave me a great picture of how he was going to hook me up and set me up." (*Id.* at 37:25-38:3).  Defendant Korey Blanck specified for Plaintiff the pieces of equipment he would provide, and "sketched it out in terms of the line as to how it would fit in the space and what equipment would go where." (*Id.* at 20:4-6).

8.    Plaintiff relied upon Defendant Korey Blanck's representations and diagramming, and purchased the equipment identified on the diagram that Defendant Korey Blanck prepared for Plaintiff.  Plaintiff credibly testified that Defendant Korey Blanck's representations regarding the new and used restaurant equipment and sketch was "where we got the list for the equipment." (*Id.* at 20:12).  Thus, Plaintiff entered into two contracts for the sale of those identified items. (*Id.* at 20:10-19, 37:25-38:3).

9.    The representations made by Defendant Korey Blanck to Plaintiff in conjunction with the preparation of that diagram, and during the conversations they had when the diagram was prepared, were false.  Plaintiff credibly testified that he "received nothing, anything of the kind that was on the sheet.  The most that I got was a bunch of broken, used stuff that was just dumped at [Simmeria]. . . it was nothing new, nothing as represented[.]" (*Id.* at 11:25:-12:2, 12:22).

**C.    The February 2010 Contract**

10.   On February 12, 2010, Plaintiff entered into a contract with Defendant Ace Restaurant Supply through Ace's president, Defendant Korey Blanck.  Pursuant to that contract, Plaintiff purchased the following items:

    a.   One new stainless steel hood with exhaust fan, costing $2,669.00;

    b.   One used two-box five-tap beer system, costing $2,795.00;

    c.   One used under-counter dishwasher, costing $2,350.00;

    d.   One new two-door glass lowboy for beer, costing $3,890.00;

    e.   One new twenty-four inch Castle flat top gas grill, costing $870.00;

    f.   One new twenty-four inch Castle rock gas charbroiler, costing $825.00;

    g.   One new two basket floor fryer, costing $840.00;

    h.   One new Vollrath eight-bird rotisserie countertop cooker, costing $2,785.00;

      i.    One new three-bay sink, costing $699.00;

      j.    One new grease trap, costing $465.00;

     k.   Two new infrared countertop ranges, costing $349.00 each, and $798.00 total;

     l.    One new forty-eight inch Bain Marie, costing $1,875.00;

   m.  One new equipment stand, costing $360.00.  (Defs.' Ex. 1) (Feb. 12, 2010, Sales Agreement).

11.     The total cost of the items was $21,221.00.  Plaintiff received a credit of $1,785.00 for trading in other equipment.  In total, Plaintiff paid "$20,602.16 which include[d] $1,166.16 in Pennsylvania sales tax" for the items identified in the February 12, 2010 Sales Agreement.  (*Id.* at 11:18-19; *see also* Pl.'s Prop. Findings of Fact, Ex. 1, at 1-2 (Feb. 12, 2010, Sales Agreement)).

12.     As noted above, the February 12, 2010 Sales Agreement specified that many of the items would be "new," and one item would be "used."  (*Id.*; Defs.' Ex. 1).

**D.**     **The March 2010 Contract**

13.     On March 16, 2010, Plaintiff entered into a second contract with Ace Restaurant Supply which "was a supplemental order [] while we were waiting for the new equipment that we thought was on order."  (Tr., at 14:11-14).  This supplemental order provided for the following items:

     a.   One new Castle bake oven with wire rack and stone on the bottom shelf, costing $2,960.00;

     b.   One used hot dog roller grill, costing $779.00;

     c.   One used acrylic roller cover, costing $170.00;

     d.   One round up bun steamer, costing $499.00.  (Defs.' Ex. 2).

14.     Plaintiff paid a total of $4,672.48 for the supplemental order, which included $264.48 in Pennsylvania sales tax.  (Pl.'s Ex. 1, at 4; Defs.' Ex. 2).  Also on March 16, 2010, Defendants faxed to Plaintiff a "Corrected Invoice" listing this equipment and corresponding prices.  (Defs.' Ex. 3).

**E.**     **The April 2010 Delivery**

15.     On April 12, 2010, Defendants mailed and faxed to Plaintiff a letter stating, *inter alia*, that "[a]ll your equipment has arrived except for the Castle Bake Oven and Custom Back Bar Sliding Door Cooler."  (Defs.' Ex. 4).

16.    Defendant Nicholas Blanck testified that he worked for Ace Restaurant Supply as a deliveryman. He also cleaned up used equipment for delivery. (Tr., at 51:20-21, 52:24-53:15).

17.    Defendant Nicholas Blanck testified that he recalled delivering items to Simmeria on two occasions, and that the items he delivered were listed on two delivery forms. (*Id.* at 70:20-72:10); (*see also* Defs.' Exs. 5, 11) (the Delivery Forms).

18.    The first delivery occurred on April 30, 2010. (Def.'s Ex. 5) (April 30, 2010 Delivery Form). One item, a "2 Box 5 Tap Beer System" was identified as "on hold." (*Id.*). The following items were listed as delivered on the form:

   a.   6'6" Stainless Steel Hood;

   b.   Undercounter Dishwasher;

   c.   2 Door Glass Lowboy Back Beer;

   d.   2 Basket Fryer;

   e.   Countertop Rotisserie;

   f.   48" Bain Marie;

   g.   Waffle Iron;

   h.   48" x 30" Equipment Stand. (*Id.*).

19.    Plaintiff credibly testified that the items delivered were not in the condition promised under the contract. For example, Plaintiff testified "[t]here was a broken dishwasher. I think there was a broken cooler, like a used broken cooler. None of the stuff was new." (Tr., at 41:12-14). Plaintiff credibly testified that "everything that was delivered here ended up going right back on a truck where our new equipment came because it was just all trash." (*Id.* at 48:16-18).

**F.    Parties' Communications and the May Correspondences**

20.    Plaintiff testified that he contacted Defendants "[m]ultiple times" to find out about the status of the items which had not yet been delivered, and to complain about the condition of items he received because they were not in the contracted-for condition. (*Id.* at 15:4-18). He credibly testified that "when I did [contact Defendants], I would get the son on the phone pretending he wasn't—he was just an employee. I would get the father giving me excuses. They were constantly pointing fingers back and forth at each one. I actually drove there. And one time, I saw them going out the back door when they saw me pulling up in the front." (*Id.* at 15:18-23). On another occasion when Plaintiff confronted Defendants about the equipment, "[t]hey were just laughing, both [Defendants Korey and

Nicholas Blanck].  In fact, at one point, [Defendant Nicholas Blanck] said, 'Why don't you just go to the restaurant supply store?'" (*Id.* at 21:7-10).  The Court credits Plaintiff's testimony as to Defendants' efforts to evade his questions and complaints about the equipment.

21.   On May 20, 2010, Plaintiff wrote Defendants a letter, requesting "all items I have purchased for Simmeria" be delivered by May 25, 2010. Alternatively, Plaintiff requested "a complete refund."  (Pl.'s Ex. 1 at 6); (Defs.' Ex. 13).

22.   In his letter, Plaintiff expressed frustration at his "inability to get: A) regular, returned phone calls; B) a straight answer without double talk and total vagaries; or C) a firm delivery date for everything we have purchased."  (Pl.'s Ex. 1 at 6); (Defs.' Ex. 13).  Additionally, Plaintiff noted that "despite me repeatedly discussing with Korey that I was relying on his expertise (and his assurances that he would make sure we had the exact equipment we need), there are 'concerns' with some of the equipment he selected for us."  (*Id.*).  At trial, Plaintiff explained his concerns were, *inter alia*, that he received "a broken under-counter dishwasher" and other inoperable equipment.  (*E.g.*, Tr., at 13:24-25).

23.   Defendant Korey Blanck responded via mail the next day, on May 21, 2010.  (Pl.'s Ex. 1 at 8); (Defs.' Ex. 14).  Defendant Korey Blanck responded that "[m]any of your statements as contained in your 5/20/10 letter come as a complete surprise. . . You ordered, you paid, and we delivered everything except one small baking oven.  That is the fact of your entire sale dated 2/12/10."  (*Id.*).  He further wrote that "I am sorry Ace will be late in delivering (1) one piece of countertop equipment to Simmeria Café & Bistro specifically a countertop baking oven of which has been ordered for you."  (*Id.*).  Defendant Korey Blanck's representations in this letter were false.  Although Defendant Korey Blanck represented that Defendants had "delivered everything except one small baking oven . . . [listed] in the entire sale dated 2/12/10;" the February 12, 2010 Sales Agreement provided for fourteen items, and Defendants had delivered only—at most—eight items.  (*Compare* Defs.' Ex. 1 (February 12, 2010 Sales Agreement), *with* Defs.' Ex. 5 (April 30, 2010 Delivery Form)).

**G.    The May 25, 2010 Delivery**

24.   The second delivery occurred on May 25, 2010.  (Defs.' Ex. 11) (May 25, 2010 Delivery Form).  The following items were listed as delivered:

   a.   Used 2 Box 5 Tap Beer System;

   b.   New Greasetrap;

   c.   New 24" Comstock-Castle Char Broiler;

   d.   New 4 Burner Stove.  (Defs.' Ex. 11).

25.     However, Plaintiff credibly testified that those items were broken, unusable, or otherwise not in the contracted-for condition. (Tr., at 46:22-49:14).

26.     Plaintiff did not receive all the equipment he bargained for, and paid for, under the two contracts with Ace Restaurant Supply and Defendant Korey Blanck. Plaintiff never received a refund for money paid to Defendants for items he never received. Defendants' failure to deliver the contracted-for equipment delayed the planned opening of Simmeria by "probably a month or two." (*Id.* at 18:24). Plaintiff "had to [go] out and obtain all separate equipment and establish the kitchen." (*Id.* at 18:20-21).

**H.     The Items Plaintiff Received and the Condition of those Items**

27.     The items Plaintiff ordered via the contracts, versus the items listed as "delivered," and the condition in which they were delivered, are summarized below. (*Compare* Defs.' Exs. 1-2 (February and March Sales Agreements), *with* Defs.' Exs. 5, 11 (April and May Delivery Forms)).

| Contracted-For Items | Listed on Delivery Forms |
|---|---|
| 1. New Stainless Steel Hood | Listed as delivered, but not as new. |
| 2. Used Two-Box Five-Tap Beer System | On hold, then listed as delivered. |
| 3. Used Under-counter Dishwasher | Listed as delivered. |
| 4. New two-door glass lowboy for beer | Listed as delivered, but not as new. |
| 5. New twenty-four inch Castle Flattop gas grill | Not listed as delivered. |
| 6. New twenty-four inch Castle rock gas charbroiler | Listed as delivered, listed as new. |
| 7. New two basket floor fryer | Listed as delivered, but not as new. |
| 8. New Vollrath 8-bird rotisserie | Listed as delivered, but not as new. |
| 9. New three-bay sink | Not listed as delivered. |
| 10. New grease trap | Listed as delivered, listed as new |
| 11. Two new infrared countertop ranges | Not listed as delivered. |
| 12. New 48-inch Bain Marie | Listed as delivered, but not as new. |
| 13. New Equipment stand | Listed as delivered, but not as new. |
| 14. New Castle Bake oven with wire-rack and stone on bottom shelf | Not listed as delivered. |
| 15. One used hot dog roller grill | Not listed as delivered. |
| 16. One used acrylic roller cover | Not listed as delivered. |
| 17. One round up bun steamer | Not listed as delivered. |

28.     Plaintiff did not receive all the items he purchased under the contracts.

29.     Additionally, the items Plaintiff did receive were not in the condition promised under the contracts. By way of example, Plaintiff credibly testified regarding the condition of equipment delivered per the May 25, 2010 Delivery Form:

   a.   Item listed: Used 2 Box 5 Tap Beer System. (Defs.' Ex. 11). Plaintiff testified that this was "the broken cooler that I recall getting . . . it didn't work." (Tr., at 46:25-47:1, 7).

   b.   Item listed: New Greasetrap. (Defs.' Ex. 11). Plaintiff testified that "it wasn't new." (Tr., at 47:4).

   c.   Item listed: New 24" Comstock-Castle Charbroiler. (Defs.' Ex. 11). Plaintiff testified that "[i]t was not new and it did not work." (Tr., at 47:25-48:1).

   d.   Item listed: New four-burner stove. (Defs.' Ex. 11). Plaintiff testified that the stove was inoperable and that he did not "recall that we ever received a functional stove from them." (Tr., at 48:13-14).

   e.   Plaintiff testified that none of the "new" items were delivered with paperwork that typically accompanies new equipment, such as manufacturer warranty paper work, manufacturer guarantees, or other such documentation. (*Id.* at 49:3-12). Plaintiff credibly testified that the "new" items were not delivered in boxes, as one would expect with new restaurant equipment shipped from a manufacturer, but rather "[t]hey literally looked like they were just pulled out of a defunct something and dropped at our place." (*Id.* at 49:13-14).

30.     In sum, Plaintiff did not receive the items that he contracted and paid for under the February 12, 2010 Sales Agreement and March 16, 2010 Sales Agreement. Any items that Plaintiff did receive were not in the condition promised under the contracts, because several of the items were used, and some of the items were inoperable.

## I.      Summary of Factual Findings and Credibility Determinations

31.     Plaintiff testified that Defendant Korey Blanck came to Simmeria Restaurant and diagrammed the kitchen set-up, identifying all the new and used restaurant equipment he would provide to Plaintiff. Relying on this diagram and representation, Plaintiff engaged in negotiations and discussions with Ace's president, Defendant Korey Blanck, and thus entered into two contracts with Ace Restaurant Supply. Plaintiff testified that he never received all the contracted-for items, and any items he did receive were not in the contracted-for condition. Plaintiff credibly testified that he purchased replacement equipment from other

vendors, and he never received any refund from Ace Restaurant Supply or Korey Blanck. The Court credits Plaintiff's testimony.

32. Defendant Nicholas Blanck testified that he worked as an independent contractor for Defendant Ace Restaurant Supply, delivering and cleaning used equipment. The Court credits that testimony. However, to the extent Defendant Nicholas Blanck testified that he delivered the contracted-for items to Simmeria and that those items complied with the contracts, (*see* Tr. 70:20-72:15), the Court concludes that his testimony is not credible. Defendant Nicholas Blanck's testimony is contradicted and rebutted by Plaintiff's credible testimony that he did not receive all the contracted-for items, and that the items were not in the condition required by the contracts. Further, to the extent Defendant Nicholas Blanck testified that he delivered all the items Plaintiff contracted for, that testimony is facially rebutted by the differences between the items listed on the Sales Agreements, and those on the Delivery Forms. (*Compare* Defs.' Exs. 1-2 (Sales Agreements), *with* Defs.' Exs. 5, 11 (Delivery Forms)).

33. Defendant Korey Blanck's testimony was not credible, and was contradicted by other evidence of record and Plaintiff's credible testimony. By way of non-exhaustive examples:

   a. Defendant Korey Blanck testified that there was no "reason to refund any of [Plaintiff's] money . . . [b]ecause we delivered what he ordered. He picked everything out. We don't design and install equipment." (Tr., at 118:15, 21-22). However, Defendants did not deliver all the items Plaintiff ordered, as indicated by Plaintiff's credible testimony, and as confirmed by the discrepancies between the Sales Agreements and the Delivery Forms. (*Compare* Defs.' Exs. 1-2 (Sales Agreements), *with* Defs.' Exs. 5, 11 (Delivery Forms)); *see also* (Tr. 46:25-49:14). Moreover, contrary to Defendant's assertion that "[Plaintiff] picked everything out," Plaintiff credibly testified that Defendant Korey Blanck came to Simmeria and diagrammed the restaurant layout, identifying equipment he would provide to outfit the kitchen. (*Id.* at 20:4-6, 37:25-38:3). Additionally, although Defendant Korey Blanck stated that "[w]e don't design and install equipment," he also testified about another lawsuit in state court, stating that "[w]e want[ed] to deliver and install the hood with the installation hood and the owner would not let the hood be installed where it was originally designed for." (*Id.* at 95:20-23). He further provided that the plaintiff in that case "wouldn't let us install where it was supposed to be installed for safety and if it's not safe where the hood is to be installed, my persons who did the install are not going to install the hood because the customer changes her mind and wants another location." (*Id.* at 96:13-17).

   b. Defendant Korey Blanck testified that Plaintiff picked out all the equipment, and that he picked out "[z]ero" equipment. (*Id.* at 119:1-4).

He further testified that "[Plaintiff] walked up and down in our showroom and picked up the equipment that he wanted . . . [h]e came to our location, . . . [a]nd there were lots of equipment there, new and used. Hundreds of pieces, filled, and it wasn't junk off of something as he puts it, junk off from a truck or out of the bar. Everything was clean and polished and shined if it was used. A lot of new." (*Id.* at 119:7-16). But, this testimony is rebutted by Plaintiff's credible testimony that Defendant Korey Blanck came to the restaurant, diagrammed the kitchen and selected the list of equipment. (*Id.* at 20:4-6, 37:25-38:3). Additionally, Plaintiff credibly testified that "the one time that I went in [to Ace Restaurant Supply] and try—I couldn't pin them down physically being in the location and I got to tell you, I was stunned because when I walked in there, it was just unbelievable. I'm thinking I'm dealing with a new restaurant equipment supply company and instead, there's nothing but a bunch of broken, used stuff that it looks like they picked up at auctions or whatever close out thing they could find from a bar somewhere and just pull in to the place." (*Id.* at 16:4-12).

    c.    Defendant Korey Blanck testified that "[t]he word new is not going to be used on delivery form[s]." (*Id.* at 90:2). This testimony is contradicted by the Delivery Forms as the May 25, 2010 Delivery Form lists the following items: "Used 2 Box 5 Tap Beer Cooler, New Greasetrap, New 24" Comstock-Castle Char Broiler, New 4 Burner Stove." (Defs.' Ex. 11).

**J.    Misrepresentations and Predicate Acts**

34.    On February 12, 2010, Defendant Korey Blanck visited Simmeria. On that date, he misrepresented to Plaintiff that he would outfit the kitchen with new equipment and provide the layout of the kitchen. Defendant Korey Blanck made these misrepresentations knowing that he and Defendant Ace Restaurant Supply would not provide the equipment he identified in the diagram, and subsequently listed on the February 12, 2010 Sales Agreement and March 16, 2010 Sales Agreement. Defendant Korey Blanck made these misrepresentations with the intent of inducing Plaintiff's reliance and to defraud Plaintiff of monies.

35.    On March 16, 2010, Defendants faxed a "Corrected Invoice" to Plaintiff listing the items in the March 16, 2010 Sales Agreement. (Defs.' Ex. 3). Defendants misrepresented that they would provide the equipment listed in this Corrected Invoice via fax, made this misrepresentation with the intent of inducing Plaintiff to pay money for the listed equipment, and made this misrepresentation to further their scheme of defrauding Plaintiff.

36.    On April 12, 2010, Defendant Korey Blanck, acting as President of Defendant Ace Restaurant Supply, faxed and mailed a letter to Plaintiff. (Tr., at 127:1-16, 129:8-11). Defendant Korey Blanck misrepresented that "[a]ll your equipment has arrived except for the Castle Bake Oven and Custom Back Bar Sliding Door

Cooler." (Defs.' Ex. 4). Defendant Korey Blanck made this misrepresentation in furtherance of the scheme to defraud Plaintiff.

37.     On May 21, 2010, Defendant Korey Blanck, acting as President of Defendant Ace Restaurant Supply, mailed a letter to Plaintiff responding to Plaintiff's May 20, 2010 letter. (Defs.' Ex. 14). In Defendant Korey Blanck's May 21, 2010 letter, he misrepresented that "[y]ou ordered, you paid, and we delivered everything except one small baking oven. That is the fact of your entire sale dated 2/12/10." (*Id.*). Defendant Korey Blanck made this misrepresentation knowing that Defendants, in fact, had not delivered all the equipment per the February 12, 2010 Sales Agreement, and made this misrepresentation in furtherance of the scheme to defraud Plaintiff.

## III.     LEGAL STANDARDS

Plaintiff asserts a claim for violation of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Count I); a RICO conspiracy claim, *id.* § 1962(d) (Count II); and additional state law claims of fraud (Count III); unjust enrichment (Count IV); intentional misrepresentation (Count V); and negligent misrepresentation (Count VI). (*Id.* at ¶¶ 12-109). The Court has original jurisdiction over Plaintiff's RICO claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. "A federal court exercising supplemental jurisdiction over state law causes of action must apply the substantive law of the State as interpreted by the State's highest court." *Silverstein v. Percudani*, 422 F. Supp. 2d 468, 471 (M.D. Pa. 2006) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)), *aff'd* 207 F. App'x 238 (3d Cir. 2006).

Plaintiff bears burden of proving his civil RICO claims, and state law claims of unjust enrichment and negligent misrepresentation, by a "preponderance of the evidence." *United States v. Local 560 of Intern. Broth. Of Teamsters, Chauffeurs, Warehousemen, and Helpers of America*, 780 F.2d 267, 279 n.12 (3d Cir. 1985); *see also Forth Washington Resources, Inc. v. Tannen*, 858 F. Supp. 455, 451 (E.D. Pa. 1994). He bears the burden of proving his state law

claim of fraud by clear and convincing evidence. *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 275-76 (3d Cir. 2010) (citing *Skurnowicz v. Lucci*, 798 A.2d 788, 793 (Pa. Super. Ct. 2002)).

## IV. ANALYSIS AND CONCLUSIONS OF LAW

As noted, Plaintiff asserts a violation of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Count I); a RICO conspiracy claim, *id.* § 1962(d) (Count II); and additional state law claims of fraud (Count III); unjust enrichment (Count IV); intentional misrepresentation (Count V); and negligent misrepresentation (Count VI). (Pl.'s Compl. at ¶¶ 12-109). We address each in turn.

### A. Count I: RICO

Section 1962(c) of the United States Code provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, . . . interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To prove a violation of § 1962(c), Plaintiff must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Kolar v. Preferred Real Estate Invs.'s, Inc.*, 361 F. App'x 354, 362 (3d Cir. 2010) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). A pattern of racketeering activity requires at least two predicate acts of racketeering that "are related and that amount to or pose a threat of continued criminal activity." *Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, 87 F. App'x 227, 231 (3d Cir. 2003) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). Predicate acts of racketeering include federal mail

fraud, 18 U.S.C. § 1341, and federal wire fraud, *id.* § 1343. *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004) (citing 18 U.S.C. § 1961(1)).

Plaintiff contends that "[i]t is clear from the testimony presented at Trial along with the evidence that the Defendants have engaged in a 'pattern of racketeering activity' as defined in the Federal [RICO] law." (Pl.'s Proposed Findings, ¶ 93, ECF No. 73). Defendants contend that "Plaintiffs have failed to me[e]t their burden to establish a violation of RICO as the testimony and admissible evidence fails to establish two (2) predicate acts of racketeering activity within ten (10) years." (Defs.' Proposed Findings of Fact at 13, ECF No. 74).

### 1. An Enterprise

The Court concludes that Plaintiff satisfied the first two elements of § 1962(c); specifically, he proved the conduct of an enterprise. Plaintiff contends that a RICO enterprise is established because "[b]oth Defendants have testified that they were the owner, agent and/or employee of Defendant Ace and neither could name any other employees or individuals with ownership interest." (Pl.'s Proposed Findings of Fact ¶ 97). Defendants do not address this "enterprise" prong in their Proposed Findings of Fact and Conclusions of Law.

The United States Code defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "There is no restriction upon the associations embraced by the definition: an enterprise includes any union or group of individuals associated in fact." *U.S. v. Turkette*, 452 U.S. 576, 580 (1981). "RICO reaches 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Boyle v. U.S.*, 556 U.S. 938, 944 (2009) (quoting *Turkette*, 452 U.S. at 583). The United States Supreme Court has stated that "[s]uch an enterprise . . . 'is proved by evidence of an ongoing

organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *Boyle*, 556 U.S. at 945 (quoting *Turkette*, 452 U.S. at 583).

Plaintiff has shown an "enterprise" consisting of Defendant Korey Blanck, Defendant Nicholas Blanck, and Defendant Ace Restaurant Supply. Defendant Korey Blanck testified that he was the President, sole shareholder, and sole decisionmaker of Defendant Ace Restaurant Supply. (Tr. 76:6-77:1, 100:8-22). Defendant Nicholas Blanck testified that he worked for Defendant Ace Restaurant Supply as a deliveryman and he "helped clean up the equipment to help my father out." (Tr. 51:13-21, 52:24-46:23). Accordingly, Plaintiff as shown that Defendants acted as an "enterprise" within the meaning of the RICO statute because they were a "group of individuals associated in fact" and they were "associated together for a common purpose of engaging in a course of conduct." *Turkette*, 452 U.S. at 580, 583.

### 2.     Pattern of Racketeering Activity

A "'pattern of racketeering activity' requires at least two predicate acts of racketeering activity." 18 U.S.C. § 1961(5). Section 1961(1) sets forth the exhaustive list of specific predicate acts that may qualify as "racketeering activity." 18 U.S.C. § 1961(1); *see also Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir. 1990) ("No defendant can be liable under RICO unless he participated in two or more predicate offense sufficient to constitute a pattern."). Additionally, "[p]roving a pattern of racketeering activity requires plaintiff to show 'that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.'" *Germinaro*, 737 F. App'x at 102 (quoting *United States v. Bergrin*, 650 F.3d 257, 267 (3d Cir. 2011)) (emphasis in original); *see also H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

I thus consider whether Plaintiff established a "pattern of racketeering activity." First, I consider whether Plaintiff showed "at least two predicate acts of racketeering activity." Next, I will discuss whether those "racketeering predicates are related." Lastly, I will analyze whether the continuity prong is satisfied.

### a. Predicate Acts

Plaintiff contends that the evidence at trial established sufficient predicate acts; specifically, he argues "[t]hese acts specifically show a violation of section 1341 (relating to mail fraud); section 1343 (relating to wire fraud); section 1951 (relating to interference with commerce); section 1952 (relating to racketeering); section 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity)." (Pl.'s Proposed Findings of Fact at ¶ 95). Defendants baldly assert that "Plaintiffs have failed to me[e]t their burden to establish a violation of RICO as the testimony and admissible evidence fails to establish two (2) predicate acts of racketeering activity within ten (10) years." (Defs.' Proposed Findings of Fact, p.13 ¶ 4).

Predicate acts of racketeering include federal mail fraud, 18 U.S.C. § 1341, and federal wire fraud, *id.* § 1343. *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004) (citing 18 U.S.C. § 1961(1)). "Mail or wire fraud consists of (1) a scheme to defraud, (2) use of the mail or interstate wires to further that scheme, and (3) fraudulent intent." *Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, 87 F. App'x 227, 231 (citing *United States v. Pharis*, 298 F.3d 228, 233 (3d Cir. 2002)). The Third Circuit has "said that the words 'to defraud' commonly refer to 'wrongdoing one in his property rights by dishonest methods or schemes,' and usually signify the deprivation of something of value by trick, deceit, chicane, or overreaching." *Germinaro*, 737 F. App'x at 104-05 (quoting *United States v. Hedaithy*, 392 F.3d 580, 591 (3d Cir. 2004)).

"When mail or wire fraud is the predicate act to a RICO violation, the plaintiff must allege that mailings are related to the underlying fraudulent scheme, even though mailings need not be an essential element of the scheme and need not themselves contain any misrepresentations." *Id.* (citing *Tabas v. Tabas*, 47 F.3d 1280, 1294 & n.18 (3d Cir. 1995)). This is because, in the context of a RICO claim, "it is the scheme that must be fraudulent, not necessarily the particular . . . wire transmissions that constitute the offenses." *Kolar*, 361 F. App'x 354, 362 (3d Cir. 2010). "[T]he use of the mails need not be an essential element of the scheme. It is sufficient for the mailing to be 'incident to an essential part of the scheme' or 'a step in [the] plot.'" *Schmuck v. United States*, 489 U.S. 705, 710-11 (1989) (citations omitted).

The Court concludes that Plaintiff has shown the requisite number of predicate acts; specifically, the evidence adduced at trial showed that Defendants committed at least three predicate acts within ten years. Those three predicate acts were: (1) On March 16, 2010, Defendants committed wire fraud when they faxed a "Corrected Invoice" to Plaintiff with the intent to defraud Plaintiff of money, (Defs.' Ex. 3); (2) on April 12, 2010, Defendants committed wire and mail fraud when they faxed and mailed Plaintiff a letter containing misrepresentations with the intent to further their scheme to defraud Plaintiff, (Defs.' Ex. 4); and (3) on May 21, 2010, Defendants committed mail fraud when they mailed Plaintiff a letter containing misrepresentations with the intent to further their scheme to defraud Plaintiff. (Defs.' Ex. 14). Moreover, each of these acts—the wire and mail frauds—were undertaken with "fraudulent intent" and as a part of the "scheme to defraud" Plaintiff. *Bonavitacola Elec. Contractor, Inc.*, 87 F. App'x at 231.

Accordingly, Plaintiff has established that Defendants committed the requisite predicate acts.

### b.    Relatedness

"Predicate acts are related if evidence demonstrates 'that the criminal activities have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'"  *Germinaro v. Fidelity Nat'l Title Ins. Co.*, 737 F. App'x 96, 102 (3d Cir. 2018) (quoting *U.S. v. Bergrin*, 650 F.3d 257, 267 (3d Cir. 2011)).

Here, the predicate acts of wire and mail fraud are related because the evidence demonstrates that they "have the same or similar purposes, results, participants, victims, or methods of commission[.]"  *Germinaro*, 737 F. App'x at 102.  The predicate acts had the same purpose and result of defrauding Plaintiff of money, and had the same participants, Defendants Korey Blanck and Ace Restaurant Supply.  The predicate acts had the same victim, Plaintiff.  And, the predicate acts had the same methods of commission, through usage of the wires and mailing.  Accordingly, Plaintiff has established that the predicate acts were related.

### c.    Continuity

"'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241 (1989) (citing *Barticheck v. Fidelity Union Bank/First National State*, 832 F.2d 36, 39 (3d Cir. 1987)).  As the Supreme Court stated regarding closed- or open-ended continuity, "[i]t is, in either case, centrally a temporal concept."  *H.J. Inc.*, 492 U.S. at 241-42.

Regarding closed-ended continuity, "a party may establish continuity as a closed-ended concept 'by proving a series of related predicates extending over a *substantial* period of time.'"  *Tabas v. Tabas*, 47 F.3d 1280, 1292 (3d Cir. 1995) (emphasis in original) (quoting *H.J. Inc.*, 492

U.S. at 242).  For closed-ended continuity, "[a] short-term scheme threatening no future criminal activity will not suffice."  *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1412 (3d Cir. 1991).  "The only (relative) absolute here should be that the predicates must stretch out at least for more than three or four months to establish closed-ended continuity in light of the [Supreme] Court's instruction that '[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy' the continuity requirement."  *Tabas*, 47 F.3d at 1300 (quoting *H.J. Inc.*, 492 U.S. at 242); *see also Kolar*, 361 F. App'x at 365 (stating that a "single, finite transaction cannot by itself underpin a pattern of racketeering activity."); *Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir. 1990) (single fraudulent scheme with no threat of repetition insufficient to establish closed-ended continuity); *Marshall-Silver Construction Co. v. Mendel*, 894 F.2d 593, 597-98 (3d Cir. 1990) (seven-month single-victim scheme without threat of additional criminal conduct did not satisfy closed-ended continuity); *Hughes v. Consol.-Pennsylvania Coal Co.*, 945 F.2d 594, 610-11 (3d Cir. 1991) (fraudulent conduct lasting twelve months does not establish closed-ended continuity).

Here, Plaintiff has not proved a closed-ended period of continuity because the related predicate acts spanned the course of three months, beginning with wire fraud committed on March 16, 2010, when Defendants faxed a "Corrected Invoice" to Plaintiff with the intent to defraud Plaintiff of money, and ending with wire and mail fraud committed on May 21, 2010, when Defendant Korey Blanck mailed and faxed a letter to Plaintiff with the intent to further the scheme to defraud Plaintiff.  (Defs.' Exs. 3, 14).  Closed-ended continuity requires a "series of related predicates extending over a *substantial* period of time."  *Tabas*, 47 F.3d at 1292 (emphasis in original) (quoting *H.J. Inc.*, 492 U.S. at 242).  The related predicates acts did not extend over a substantial period of time, sufficient to satisfy closed-ended continuity.

"[O]pen-ended continuity is established when the commission of the predicate acts is a 'regular way of conducting defendant's ongoing legitimate business.'" *Tabas*, 47 F.3d at 1295 (quoting *H.J. Inc.*, 492 U.S. at 243). "The continuity requirement is likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO 'enterprise.'" *Id.* at 1293 (quoting *H.J. Inc.*, 492 U.S. at 243). "The clear implication of this language is that the ambit of RICO may encompass a 'legitimate' businessman who regularly conducts his business through illegitimate means, that is, who repeatedly defrauds those with whom he deals and, in the process, commits predicate acts, for instance by using the postal service as a means of accomplishing his scheme." *Id.*

"[S]ince the pattern inquiry must assess whether the defendant's actions amount to or pose a threat of continued criminal activity, it is often helpful to examine the actions which are alleged to form the basis of criminal activity." *Kehr Packages*, 926 F.2d 1406, 1413 (3d Cir. 1991) (internal citations and quotations omitted). "However, if a defendant committed numerous acts of deceit as part of multiple schemes or a single ongoing fraud, this fact would be relevant to the continuity question, although not necessarily dispositive. Moreover, it would be relevant if particular mailings, unlike those in this case, contained false or misleading statements or otherwise constituted separate deceptive acts." *Id.*

Plaintiff has not presented sufficient evidence to establish the open-ended continuity prong. Although Defendant Korey Blanck's conduct in this case was fraudulent, as detailed below, there is insufficient evidence to establish that the fraudulent activity and predicate acts

was Defendants' "regular way of conducting [their] ongoing legitimate business." *Tabas*, 47 F.3d at 1295 (quoting *H.J. Inc.*, 492 U.S. at 243).

Plaintiff sought to establish "that the predicates are a regular way of conducting defendant's ongoing legitimate business" with evidence of similar lawsuits brought against Defendants in Pennsylvania state court. (*See* Pl.'s Ex. 2 ("Compendium of Certified State Court Dockets")). Plaintiff attached the complaints and other documentation in the cases *Jaz & Nate Steaks, LLC, et al. v. Ace Restaurant Supply, LLC, Korey Blanck, & Nicholas Blanck*, No. 10-7491, (Berks Cnty. Com. Pl. Apr. 19, 2010), and *Velasco & Cortez d/b/a La Union Carniceria Mini Market v. Ace Restaurant Supply, LLC & Korey Blanck d/b/a Ace Restaurant Supply*, No. 10-18684, (Berks Cnty. Com. Pl., Oct. 29, 2010). The plaintiffs in these state court cases raised substantially similar claims to the claims presented here: claims of fraud against Defendant Korey Blanck because he represented that he and Defendant Ace would deliver and provide certain equipment listed in contracts, he received payment for that equipment, and then failed to provide the bargained-for equipment.[1]

However, an earlier ruling in this case determined that the State Court Complaints Plaintiff sought to admit were inadmissible hearsay evidence. (Order, ECF No. 48). Defendants filed a Motion in Limine to preclude evidence of these State Court Complaints. Judge Surrick granted the motion, stating:

> Defendants' Motions state that Plaintiffs offered these [State Court Complaints and] documents into evidence at the Arbitration held in this matter on June 8, 2016. Defendants anticipate that, at the trial before this Court, Plaintiffs will seek to establish a pattern of RICO behavior by introducing evidence of

---

[1] For example, "Plaintiffs believe and therefore aver that such misrepresentation was materially false in that Defendants: misrepresented the nature of the Equipment; are not certified by the City of Reading to install all of the Equipment; and have continued on a similar course of conduct with other customers." (Compl., ¶ 32, *Velasco*, No. 10-18684).

these state court lawsuits. Defendants contend that admitting a record of the state court actions would taint the jury's feelings towards Defendants by falsely implying that the allegations contained within the state court records are established facts.

After reviewing Plaintiffs' pleadings, it is evident that they do intend to offer evidence of the prior state court complaints for the truth of the matter asserted therein, and to attempt to demonstrate a pattern of behavior necessary to prove their civil RICO claims. Indeed, Plaintiffs acknowledge that they do in fact intend to offer these documents at trial, since "the factual allegations of each of the state court complaints . . . are near identical to those contained within this matter." Plaintiffs cite this Court's January 11 Memorandum for the proposition that the misrepresentation and fraud charges contained within the two state court records that were submitted to this Court at that time demonstrate that Defendant Ace regularly committed fraud as part of its normal business practices.

Notwithstanding Plaintiffs' arguments that evidence of the state court complaints is necessary to allow Plaintiffs to prove their RICO claims, the evidence they seek to admit is hearsay. It is an out of court statement being offered for the truth of the matter contained therein. Moreover, Plaintiffs have failed to offer any valid basis for the admission of these documents.

(Order, ECF No. 48) (citations omitted).

In response to this ruling, Plaintiff filed a Response to Defendants' Motions in Limine. (Pl.'s Resp., ECF No. 49). To cure the hearsay problem, Plaintiff stated that he had "arranged for the individual plaintiffs—each authorized representative of the legal entity under which they operated, within the two (2) predicate cases to appear and testify at trial . . . both Mr. and Mrs. Carbajal will appear and testify . . . [s]o to will Mr. Velasco and Ms. Cortez appear and testify." (*Id.* at 2). Following Oral Argument on this issue, (Order, ECF No. 51; Minutes, ECF No. 52), Judge Surrick ruled that Defendants' Motions in Limine were dismissed as moot, because "[a]t Oral Argument on these Motions it was determined that Defendants would be given the opportunity to depose the witnesses that Plaintiff intends to present related to the subject actions,

and that trial scheduled for July 18, 2017 would be continued to give Defendants time to conduct the depositions." (Order, ECF No. 53).

Notwithstanding any of this, Mr. and Mrs. Carbajal, Mr. Velasco, and Ms. Cortez did not testify at trial. As Judge Surrick initially concluded,[2] (Order, ECF No. 48), the State Court Complaints are inadmissible hearsay: they are out-of-court statements offered for the truth of the matter asserted. F.R.E. 801(c). Despite Plaintiff's representations to the contrary, none of the state court plaintiffs appeared to testify at trial. Therefore, because the State Court Complaints are inadmissible hearsay, Plaintiff cannot rely on those Complaints to establish that the related predicate acts of wire and mail fraud are the Defendants' regular way of conducting their business.

Accordingly, when viewing the *admissible* evidence, the Court finds that Plaintiff has not demonstrated open-ended continuity. 18 U.S.C. § 1962(c). Although Defendant Korey Blanck committed fraud under Pennsylvania law, and Defendants committed numerous related predicate acts against Plaintiff, the admissible evidence does not support a finding that this is Defendants' "regular way of conducting [their] ongoing legitimate business." *Tabas*, 47 F.3d at 1295 (quoting *H.J. Inc.*, 492 U.S. at 243). As the Supreme Court noted, "[i]t is, in either case, centrally a temporal concept." *H.J. Inc.*, 492 U.S. at 241-42. Here, the admissible evidence demonstrates an approximate three-month fraudulent scheme committed against Plaintiff.

---

[2] Absent extraordinary circumstances, the law of the case doctrine cautions against relitigating previously decided issues at a later stage in the litigation. *In re Pharm. Benefit Managers Antitrust Litig.*, 582 F.3d 432, 438-39 (3d Cir. 2009); *see also Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1982) ("Under the law of the case doctrine, once an issue is decided, it will not be relitigated in the same case, except in unusual circumstances."). There are no extraordinary circumstances to warrant revisiting Judge Surrick's previous ruling on this issue.

Plaintiff has thus failed to carry his burden of proving, with admissible evidence, that Defendants *regularly* conducted their business through the related predicate acts.[3]

Accordingly, the Court concludes that Plaintiff has not satisfied the "continuity" prong required to prove a violation of Section 1962(c). Thus, the Court finds Defendants not liable on Count I.

## B. Count II: RICO Conspiracy

Section 1962(d) makes it "unlawful for any person to conspire to violate" Section 1962(c). To establish a RICO conspiracy, the plaintiff must show "(1) that two or more persons agreed to conduct or to participate, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity; (2) that the defendant was a party to or member of that agreement; and (3) that the defendant joined the agreement or conspiracy knowing of its objective to conduct or participate, directly or indirectly, in the conduct of an enterprise's affairs through a pattern of racketeering activity." *United States v. John-Baptiste*, 747 F.3d 186, 207 (3d Cir. 2014). Liability under Section 1962(d) may still be found even if the defendant has not violated Section 1962(c). *Smith v. Berg*, 247 F.3d 532, 537 ("[T]he Supreme Court found that a

---

[3] Another point weighs against finding open-ended continuity. The Supreme Court has stated that, to show open-ended continuity, the plaintiff must prove that the commission of predicate acts is the regular way of conducting Defendants' "ongoing legitimate business." *H.J. Inc.*, 492 U.S. at 243. Defendant Korey Blanck testified that he retired, has wound down Ace Restaurant Supply, and held a public auction of all assets. (Tr. 75:23-76:16, 83:23-84:1, 111:5-114:10). "[T]he Supreme Court stressed that a plaintiff must show also that 'the racketeering acts are related, *and* that they amount to or pose a threat of continued criminal activity.'" *Kehr Packages, Inc.*, 926 F.2d at 1412 (quoting *H.J. Inc*, 492 U.S. at 239). On the record before me, I have no basis to conclude that Korey Blanck has not retired, nor is there evidence to support a conclusion that Ace Restaurant Supply continues to do business selling restaurant equipment. In the absence of evidence supporting such conclusions, I cannot conclude that this case involves an "ongoing legitimate business" or a "threat of continued criminal activity."

violation of section 1962(c) was not a prerequisite to a violation of section 1962(d)." (citing *Salinas v. United States*, 522 U.S. 52, 65 (1997))).

The Court concludes that there is insufficient evidence to establish Defendants' liability for a violation of Section 1962(d).  Specifically, there is no evidence that "two or more persons agreed to conduct . . . an enterprise's affairs through a pattern of racketeering activity."  *John-Baptiste*, 747 F.3d at 207.  Defendants Korey and Nicholas Blanck certainly agreed to conduct the enterprise's affairs, as shown by Defendant Korey Blanck's testimony he was the President and sole shareholder of Defendant Ace and Defendant Nicholas Blanck's testimony that he worked for his father and Defendant Ace.  (Tr. 51:13-21, 52:24-46:23, 76:6-77:1, 100:8-22).  Thus, there was an agreement between the Defendants.

However, the agreement must be to conduct the enterprise's affairs "through a pattern of racketeering activity."  *John-Baptiste*, 747 F.3d at 207.  As the Third Circuit recently explained, "[a] conspiracy may be found, . . . , 'even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense.  The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other.'"  *United States v. Fattah*, No. 16-4397, 2019 WL 209109 at *33 (3d Cir. Jan. 16, 2019) (quoting *Salinas v. United States*, 522 U.S. 52, 63-64 (1997)).  Here, there was no evidence to conclude that Defendants "agree[d] to pursue the same criminal objective."  While the Court understands that such an agreement would likely not be made in plain view, there is insufficient evidence to conclude that Defendants agreed to conduct their enterprise through a pattern of racketeering activity.

Although Defendant Korey Blanck committed fraud under Pennsylvania law, as detailed immediately below, and Defendant Nicholas Blanck was complicit in, and acquiesced to, that

fraud; that evidence does not provide a sufficient basis to find an agreement to conduct their enterprise through a pattern of racketeering activity.  Accordingly, the Court finds Defendants not liable under the RICO conspiracy law of 18 U.S.C. § 1962(d).

### C.  Counts III and V:  Fraud and Intentional Misrepresentation[4]

Plaintiff next asserts a claim for fraud and intentional misrepresentation under Pennsylvania law.  (Pl.'s Proposed Findings of Fact ¶¶ 107-15, 120-26).  Defendants contend that "Plaintiffs have failed to me[e]t their burden of establishing fraud on part of the Defendants relative to sales agreements dated February 12, 2010, and March 16, 2010."  (Defs.' Proposed Findings of Fact, p. 13 ¶ 5).

Under Pennsylvania law, to prevail on a claim of fraud or intentional misrepresentation, a plaintiff must prove the following elements:  (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.  *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 275-76 (3d Cir. 2010) (citing *Skurnowicz v. Lucci*, 798 A.2d 788, 793 (Pa. Super. Ct. 2002)); *see also Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994).  The plaintiff must prove each element by "clear and convincing evidence." *Id.*

---

[4]  In Counts III and V, Plaintiff asserts Pennsylvania law claims of fraud and intentional misrepresentation.  (Pl.'s Compl. at ¶¶ 77-87, 93-101).  "The Pennsylvania courts, however, do not distinguish between causes of action for fraud and intentional misrepresentation."  *Giordano v. Claudio*, 714 F. Supp. 2d 508, 518 (E.D. Pa. 2010) (citing *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)); *see also Young v. Home Depot U.S.A.*, No. 15-5436, 2016 WL 8716423 at *5 (E.D. Pa. Sept. 30, 2016) (discussing Pennsylvania law and stating "[t]he torts of fraud and intentional misrepresentation are the same[.]").  Thus, Counts III and V assert identical and duplicative claims.  Accordingly, the Court will analyze Plaintiff's Counts III and V together using Pennsylvania's six-factor test.

The Supreme Court of Pennsylvania has "elaborated on those actions which would constitute fraudulent behavior: 'fraud consists in anything calculated to deceive, whether by single act or combination, or by suppression of truth, or a suggestion of what is false, whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture. It is any artifice by which a person is deceived to his disadvantage.'" *Tunis Bros. Co. v. Ford Motor Co.*, 952 F.2d 715, 731 (3d Cir. 1991) (quoting *In re McClellan's Estate*, 75 A.2d 595, 598 (Pa. 1950)). "A fraud also occurs when one is induced to assent when he would not otherwise have done so." *Id.* (citing *Delahanty v. First Pennsylvania Bank, N.A.*, 464 A.2d 1243, 1252 (Pa. Super. Ct. 1983)).

I conclude that Plaintiff has shown Defendants Korey Blanck and Ace Restaurant Supply—through its President Korey Blanck—committed fraud under Pennsylvania law. The evidence establishes that Plaintiff justifiably relied on Defendant Korey Blanck's material misrepresentation to Plaintiff that he and Defendant Ace Restaurant Supply had the ability to deliver certain specified equipment in certain identified conditions. I further find that Defendant Korey Blanck made that material misrepresentation intending Plaintiff to rely upon it, and with the knowledge that Korey Blanck and Ace Restaurant Supply would not be providing the listed equipment in the identified conditions.[5]

Plaintiff adduced evidence at trial sufficient to establish Defendant Korey Blanck's fraud/intentional misrepresentation. First, Defendant Korey Blanck made a "representation" that was "material to the transaction at hand." Specifically, he represented that he and Defendant Ace Restaurant Supply would provide certain equipment in specified conditions to Plaintiff for

---

[5] Plaintiff did not present evidence establishing that Defendant Nicholas Blanck made any material misrepresentations, and thus the Court finds Defendant Nicholas Blanck not liable for fraud.

use in his restaurant, and that they would deliver and line up that equipment in the kitchen. (Tr. 20:4-6, 27:25-38:3; 39:10-41:25). A "misrepresentation is material if the party would not have entered into the agreement, but for the misrepresentation." *Eigen v. Textron Lycoming Reciprocating Engine Div.*, 874 A.2d 1179, 1186 (Pa. Super. Ct. 2005); *see also Sevin v. Kelshaw*, 611 A.2d 1232, 1237 (Pa. Super. Ct. 1992) ("A misrepresentation is material if it is of such character that . . . had it not been made, the transaction would not have been consummated."). Defendant Korey Blanck's misrepresentations were material: Plaintiff expected to receive new, functioning equipment, but instead got "a bunch of broken, used stuff." (Tr. at 11:25-12:2). In fact, Plaintiff credibly testified that he had to purchase new equipment because all the equipment he received from Korey Blanck and Ace Restaurant Supply was inoperable. (*Id.* at 18:20-21, 48:16-18).

Second, Defendant Korey Blanck made these representations knowing that they were false, and with the intent of misleading Plaintiff in relying upon the false representations. "By its very nature, 'fraud can rarely if ever be shown by direct proof . . . It must necessarily be largely inferred from the surrounding circumstances.'" *Smith v. United States Liability Co.*, 2018 WL 3866079 at *3 (Pa. Super. Ct. 2018) (quoting *Rohm & Haas Co. v. Cont'l Cas. Co.*, 781 A.2d 1172, 1178 (Pa. 2001)); *see also Liberty Bell Bank v. Rogers*, 726 F. App'x 147, 154 (3d Cir. 2018) ("[I]ntent may be inferred from circumstantial evidence."). The evidence adduced at trial supports a conclusion that Defendant Korey Blanck had the requisite culpable state of mind. Most notably, the equipment Plaintiff received was broken, inoperable, and certainly not "new" as Defendant Korey Blanck represented and confirmed in the Sales Agreements. Moreover, once Plaintiff began complaining about the condition of the equipment he received, Korey

Blanck refused to provide Plaintiff any refund, and began evading Plaintiff's communications and efforts to obtain the proper equipment.

The evidence at trial clearly and convincingly showed that Defendants intended to defraud Plaintiff. First, Defendant Korey Blanck represented that he and Defendant Ace would supply new restaurant equipment to Plaintiff, and line up that equipment in Simmeria's kitchen. (Tr. at 10:11-15:24; 39:10-41:25; 57:1-3; 119:7-16). But, this turned out to be false. Evidence of an individual's conduct is instructive when determining intent. *Cf. State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 114 (3d Cir. 2009) ("An actor is presumed to intend the natural and expected results of his actions."). Here, Defendants willfully delivered "a bunch of broken, used stuff that was just dumped at [Simmeria]. . . it was nothing new, nothing as represented" (Tr. at 11:25-12:2, 12:22). Plaintiff contracted for thirteen new pieces of restaurant equipment items; of the equipment he did receive, he credibly testified "[n]one of the stuff was new." (*Id.*, at 41:13-14). Further, Defendant Korey Blanck represented he would be taking the new restaurant equipment and "delivering [them into] the kitchen and putting [the] new pieces in line." (*Id.* at 39:19-20). However, Plaintiff credibly testified that, instead of delivering the equipment as Defendant Korey Blanck represented, "[t]here was like four broken pieces of something that got dumped off" in the middle of the restaurant. (*Id.* at 40:24-31:17). The inoperable items Defendants did deliver "were brought to Simmeria Café's location and just dumped" and not properly positioned in the kitchen, as Defendant Korey Blanck represented. (*Id.* at 39:19-20).

I find Defendant Korey Blanck's intentional disregard for his representations to Plaintiff as strong evidence of his fraudulent intent. This willful provision of broken and inoperable equipment, simply dumped in the middle of the restaurant and not placed in the kitchen, and in

conjunction with the items Defendants failed to deliver, indicates that Defendant Korey Blanck, from his first contact with Plaintiff, intended to disregard the contract and defraud Plaintiff of money.

Defendants' conduct when confronted by Plaintiff regarding the condition of equipment and failure to deliver also supports a finding of Defendants' intent to defraud Plaintiff. Despite Plaintiff contacting Defendants "[m]ultiple times" with his concerns, Defendants refused to provide Plaintiff with proper equipment in working condition or provide him a refund, at one point telling Plaintiff "[w]hy don't you just go to the restaurant supply store?" (Tr. 15:18, 21:9-10). In his May 21, 2010 response letter, Defendant Korey Blanck misrepresented to Plaintiff that "[y]ou ordered, you paid, and we delivered everything except one small baking oven. That is the fact of your entire sale dated 2/12/10." (Defs.' Ex. 14). In fact, all the items identified in the February 12, 2010 Sale Agreement had *not* been delivered. (*Compare* Defs.' Ex. 1 (February 12, 2010 Sales Agreement), *with* Defs.' Ex. 5 (April 30, 2010 Delivery Form)). Defendant Korey Blanck's prevarications and misrepresentations in his May 21, 2010 letter demonstrates his deceptive intent. Defendants also exhibited their intent to defraud by avoiding Plaintiff's phone calls and pretending to be another employee. (Tr. at 15:18-20, 37:7-10). On one occasion, Plaintiff drove to Defendant Ace Restaurant Supply, and saw Defendants "going out the backdoor when they saw [him] pulling up in the front." (*Id.* at 15:21-23).

In sum, the willful provision of broken inoperable equipment coupled with Defendants' fraudulent misrepresentations and evasive conduct when confronted with the equipment issues, shows that Defendant Korey Blanck made these material misrepresentations knowing that they were false, and with the intent to defraud Plaintiff.

Lastly, Plaintiff justifiably relied on Defendant Korey Blanck's misrepresentations, and Plaintiff's resulting injury was proximately caused by that justifiable reliance. "To be justifiable, reliance upon the representation of another must be reasonable." *Porreco v. Porreco*, 811 A.2d 566, 571 (Pa. 2002). "Where the means of obtaining the information in question were not equal, the representations of the person believed to possess superior information may be relied upon." *Fort Washington Resources, Inc. v. Tannen*, 858 F. Supp. 455, 460 (E.D. Pa. 1994) (citing *Siskin v. Cohen*, 70 A.2d 293, 295 (Pa. 1950)). "Whether the party claiming to have been defrauded relied upon the false representation is a question of fact." *Silverman v. Bell Sav. & Loan Ass'n*, 533 A.2d 110, 114 (Pa. Super. Ct. 1987).

Here, Plaintiff justifiably relied on Defendant Korey Blanck's misrepresentations that he and Defendant Ace would provide the contracted-for restaurant equipment in the identified condition. Plaintiff credibly testified that Defendant Korey Blanck came to Simmeria and "[h]e sketched out what he was going to do. He gave me the whole equipment list. I mean, he really gave me a great picture of how he was going to hook me up and set me up." (Tr. at 37:25-38:3). Plaintiff credibly testified that Plaintiff himself picked out "No [equipment]. [He] totally trusted [Defendant Korey Blanck]." (*Id.* at 38:14); *see also* (Defs.' Ex. 13) (Plaintiff noting that "despite me repeatedly discussing with Korey that I was relying on his expertise (and his assurances that he would make sure we had the exact equipment we need) . . . ."). Plaintiff further credibly testified that items listed in the two Sales Agreements were "from that handwritten list that [Defendant Korey Blanck] made" and that the items listed in the Sales Agreements "would have been what was based off of the initial drawing." (Tr., at 20:15, 19-20). Defendant Korey Blanck's misrepresentations led Plaintiff to justifiably believe he was "dealing with a new restaurant supply company" because Defendants misrepresented that "they had a

relationship with [new restaurant equipment manufacturers] and that this is what they do[.]" (*Id.* at 16:8, 19-20).

Additionally, Plaintiff's injury was caused by his justifiable reliance on Defendant Korey Blanck's misrepresentations. Because of the misrepresentations, Plaintiff paid $25,275.64 to Defendants, expecting that he would receive the new restaurant equipment as listed in the Sales Agreements. Instead of receiving the new equipment, Plaintiff received "a bunch of broken, used stuff that was just dumped at [Simmeria]." (N.T., 12:1-2). Plaintiff "had to [go] out and obtain all separate equipment and establish the kitchen," (*Id.* at 18:20-21) because "everything that was delivered here ended up going right back down on a truck where our new equipment came because it was just all trash." (*Id.* at 58:16-18). Defendants' failure to deliver the promised equipment delayed the planned opening of Simmeria by "probably a month or two." (*Id.* at 18:24). Defendant Korey Blanck's misrepresentations directly caused the harm to Plaintiff.

Accordingly, the Court concludes that Defendant Korey Blanck is liable for fraud under Pennsylvania law.

Defendants contend that, should liability be found, it should solely be against Defendant Ace Restaurant Supply and not against the individual Defendants. In their Proposed Findings of Fact and Conclusions of Law, Defendants argue "the testimony and admissible evidence fails to establish a sufficient basis to pierce the corporate veil . . . and if liability is assessed it is against the Defendant Ace Restaurant Supply and not against the Defendant Korey Blanck and the Defendant Nicholas Blanck individually." (Defs.' Proposed Findings of Fact, p. 14 ¶ 9).[6]

---

[6] Plaintiff does not request that the Court pierce the corporate veil, and therefore the Court will not assess whether doing so would be proper. Regardless, Defendant Korey Blanck is personally liable for his tortious conduct.

However, "Pennsylvania law has long recognized the participation theory as a basis of liability for the individual acts of an officer of a corporation. Under this theory, an officer of a corporation who takes part in the commission of a tort may be personally liable for his tortious acts." *Kelvin Cryosystems, Inc. v. Lightnin*, 2004 WL 2601121 at *12 (E.D. Pa. 1994) (citing *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86 (Pa. 1983)). "The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor[.]" *Wicks*, 470 A.2d at 90. The Pennsylvania Superior Court has explained the difference between liability imposed on a corporate officer by piercing the corporate veil and liability pursuant to the participation theory:

> There is a distinction between liability for individual participation in a wrongful act and an individual's responsibility for any liability-creating act performed behind the veil of a sham corporation. Where the court pierces the corporate veil, the owner is liable because the corporation is not a bona fide independent entity; therefore, its acts are truly his. Under the participation theory, the court imposes liability on the individual as an actor rather than as an owner. Such liability is not predicated on a finding that the corporation is a sham and a mere alter ego of the individual corporate officer. Instead, liability attaches where the record establishes the individual's participation in the tortious activity.

*Brindley v. Woodland Vill. Rest. Inc.*, 652 A.2d 865, 868 (Pa. Super. Ct. 1995) (quoting *Wicks*, 470 A.2d at 89-90). Accordingly, "under this theory, a corporate officer can be held liable for 'malfeasance,' i.e., the improper performance of an act, but not for 'mere nonfeasance,' i.e., the omission of an act which a person ought to do." *Brindley*, 652 A.2d at 868 (quoting *Wicks*, 570 A.2d at 90).

Here, the Court concludes that Defendant Korey Blanck is "personally liable for his tortious acts" of fraud as "an officer of a corporation who takes part in the commission of a tort." *Kelvin Cryosystems, Inc.*, 2004 WL 2601121 at *12 (citing *Wicks*, 470 A.2d 86 (Pa. 1983)).

Defendant Korey Blanck himself committed the tort; accordingly, the Court concludes that he is personally liable on Counts III and V.

### D.    Count IV: Unjust Enrichment

Plaintiff asserts in Count IV a cause of action for unjust enrichment.  (Pl.'s Compl. at ¶¶ 88-92).  In Pennsylvania, "an unjust enrichment claim may be pled as a companion, not an alternative, to a tort claim.  In that case, the unjust enrichment seeks to recover a benefit the defendant gained by committing the tort."  *Symphony FS Limited v. Thompson*, No. 18-3904, 2018 WL 6715894, at *10 (E.D. Pa. Dec. 20, 2018).  "In the tort setting, an unjust enrichment claim is essentially another way of stating a traditional tort claim (i.e., if defendant is permitted to keep the benefit of his tortious conduct, he will be unjustly enriched)."  *Steamfitters Local Union No. 420 Welfare Fund v. Phillip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999).

A plaintiff claiming unjust enrichment must "'show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider.'"  *Bair v. Purcell*, 500 F. Supp. 2d 468, 499 (M.D. Pa. 2007) (quoting *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987)).  Under Pennsylvania law, the elements of a claim for unjust enrichment are: (1) the plaintiff conferred a benefit upon the defendant; (2) an appreciation of such a benefit by defendant; and (3) the defendant accepted and retained such benefit under circumstances that it would be inequitable for the defendant to retain the benefit without payment of value.  *Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. 1995); *see also Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000).

The Court concludes that Plaintiff proved the elements for a claim of unjust enrichment against Defendants Ace Restaurant Supply, LLC and Korey Blanck.  First, Plaintiff conferred a

benefit upon Defendants Ace Restaurant Supply and Korey Blanck: Plaintiff paid $25,274.64 pursuant to the contracts. (Tr., at 11:11-19, 20:17-21:10). Second, Defendants appreciated that benefit, as they received the monies Plaintiff paid. (*See id.* at 78:13-82:7). Lastly, Defendants Ace Restaurant Supply and Korey Blanck accepted and retained that benefit in such circumstances that it would be inequitable to retain the benefit without payment of value: Plaintiff paid the money solely because of, and in reliance upon, Defendant Korey Blanck's fraudulent misrepresentations. Under these circumstances, it would be inequitable for Defendants Ace Restaurant Supply and Korey Blanck to retain the money paid by Plaintiff. Accordingly, the Court concludes that Plaintiff is entitled to recover against Defendants Ace Restaurant Supply, LLC and Korey Blanck on his unjust enrichment claim.

### E. Count VI: Negligent Misrepresentation

To succeed on a claim of negligent misrepresentation under Pennsylvania law, plaintiff must show: "1) a misrepresentation of a material fact; 2) made under circumstances in which the misrepresenter ought to have known its falsity; 3) with an intent to induce another to act on it; and 4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Smith v. Lincoln Ben. Life Co.*, 395 F. App'x 821, 824 (3d Cir. 2010) (citing *Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 277 (Pa. 2005)).

Plaintiff proved that Defendant Korey Blanck committed fraud/intentional misrepresentation under Pennsylvania law. Similarly, Defendant Korey Blanck is liable for negligent misrepresentation. First, he made a misrepresentation of material fact—that he and Defendant Ace Restaurant Supply would provide the items he identified and in certain specified conditions. (Tr., at 20:4-6, 27:25-38:3). Second, having found that Defendant Korey Blanck made these material misrepresentations knowing of their falsity, he necessarily "ought to have

known of its falsity." Third, Defendant Korey Blanck intended to induce Plaintiff to rely upon his false misrepresentations. Lastly, Plaintiff's resulting injury was caused by his justifiable reliance upon Defendant Korey Blanck's intentional material misrepresentations. Accordingly, Defendant Korey Blanck is liable for negligent misrepresentation under Pennsylvania law.

The Court concludes that Defendant Nicholas Blanck is not liable for negligent misrepresentation. Plaintiff presented no evidence establishing that Defendant Nicholas Blanck made any representations of material fact, and therefore he is not liable.


## V.     DAMAGES

The Court finds Defendants not liable on Counts I and II asserting violations of 18 U.S.C. § 1962(c) and (d). The Court finds Defendant Nicholas Blanck not liable on all Counts. The Court finds Defendant Ace Restaurant Supply, LLC, and Defendant Korey Blanck, in his individual capacity as the tortfeasor, liable for fraud/intentional misrepresentation, unjust enrichment, and negligent misrepresentation. Accordingly, the Court will enter judgment for Plaintiff as follows.

### A.     Actual Loss Damages

"Under Pennsylvania law, in an action based on fraud, the measure of damages is 'actual loss.'" *Delahanty v. First Pennsylvania Bank, N.A.*, 464 A.2d 1243, 1257 (Pa. Super. Ct. 1983) (quoting *Kaufman v. Mellon Nat'l Bank & Trust Co.*, 366 F.2d 326 (3d Cir. 1966)). Here, Plaintiff's "actual loss" is $25,275.64: he paid Defendants this amount pursuant to the Sales Agreements he entered relying upon Defendant Korey Blanck's fraud. Accordingly, judgment will be entered for Plaintiff against Defendants Ace Restaurant Supply, LLC, and Defendant Korey Blanck in the amount of $25,275.64.

### B.      Legal Fees and Trebled Damages

Plaintiff requests an award for legal fees and costs stating that he "has expended approximately $18,000.00 in legal fees; Plaintiff has expended litigation costs in the amount of $2,300.00." (Pl.'s Proposed Findings of Fact, ECF No. 73, p.13).  Additionally, Plaintiff seeks a trebling of damages.  (*Id.*).  However, these remedies are provided for in the Civil Remedies of the RICO Statute, 18 U.S.C. § 1964, but not by the state law claims on which Plaintiff has prevailed.  Having found Defendants not liable on the RICO Counts, the Court will not award legal fees or trebled damages.

### C.      Punitive Damages

"It is well established that, under Pennsylvania law, punitive damages may be awarded in cases of common law fraud."  *Klein v. Weidner*, 729 F.3d 280, 296 (3d Cir. 2013). "Generally, the plaintiff in an action for fraud may recover all actual losses caused by the defendant's fraud.  The plaintiff may also recover punitive damages where there are aggravated circumstances."  *Smith v. Renaut*, 564 A.2d 188, 193 (Pa. Super. Ct. 1989) (citing *Long v. McAllister*, 118 A. 506 (Pa. 1922)) (internal citations omitted).  "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others."  *Hutchison ex rel. Hutchinson v. Luddy*, 870 A.2d 766, 770 (Pa. 2005).  "[P]unitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct."  *Id.* "The purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others like him from similar conduct."  *Id.*

"Pennsylvania law requires that plaintiff support a punitive damages claim 'by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to

which plaintiff was exposed and that (2) he acted, or failed to act, as the case my be, in conscious disregard of that risk.'" *Norfolk Southern Railway Co. v. Pittsburg & W.Va. R.R.*, 153 F. Supp. 3d 778, 817 (W.D. Pa. 2015) (quoting *Hutchinson*, 870 A.2d at 772). Thus, "to justify an award of punitive damages, the fact-finder must determine that the defendant acted with a culpable state of mind, *i.e.*, with evil motive or reckless indifference to the rights of others." *Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.*, 801 F.3d 347, 360 (3d Cir. 2015) (quoting *Hutchinson v. Penske Truck Leasing Co.*, 876 A.2d 978, 983-84 (Pa. Super. Ct. 2005)).

Additionally, a punitive damages award must comply with the Due Process Clause of the Fourteenth Amendment. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). "In determining whether a punitive damages award comports with due process, courts must 'consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and its punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.'" *CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 499 F.3d 184, 189-90 (3d Cir. 2007) (quoting *Campbell*, 538 U.S. at 418) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574-75 (1996)). The first factor is "'[p]erhaps the most important indicium of the reasonableness of a punitive damages award.'" *Id.* at 363 (citing *Gore*, 517 U.S. at 575). Given the importance of this first factor, the Supreme Court has provided further guidance and instructed courts to consider the applicability of the following sub-factors:

> (1) the harm caused was physical as opposed to economic; (2) the tortious conduct evinced an indifference to or reckless disregard of the health or safety of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated actions or was an isolated incident; and (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 499 F.3d 184, 190 (3d Cir. 2007)

(quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003)).

The Court concludes that an award of punitive damages against Defendant Korey Blanck is proper to deter him and others from committing willful fraud as he did in this matter. *Hutchinson*, 870 A.2d at 770 ("The purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others like him from similar conduct.").  Although the harm was economic as opposed to physical, and Korey Blanck did not exhibit indifference to the health of others, the remaining factors weigh in favor of imposing punitive damages against Defendant Korey Blanck for his fraudulent, deceptive, and tortious conduct.  Defendant Korey Blanck preyed on a fledgling restauranteur, and intended to defraud him of money.  The conduct involved repeated actions, as Defendants committed numerous acts of wire and mail fraud against Plaintiff over the course of their business relationship.  This was not an isolated incident. Since his first interactions with Plaintiff, Defendant Korey Blanck consistently conducted himself in a manner showing "conduct that is outrageous . . . [and with] reckless indifference to the rights of others[,]" *Hutchison*, 870 A.2d at 770 (Pa. 2005):  Defendant willfully provided broken and inoperable equipment which was supposed to be new, pretended to be other individuals on the phone, and ran out the back door when Plaintiff arrived to discuss the broken equipment.  This evidence shows that the harm was a direct result of "intentional malice, trickery, or deceit."  *CGB Occupational Therapy, Inc.*, 499 F.3d at 190.

In sum, the Court concludes an award of punitive damages against Defendant Korey Blanck is proper for his complete and utter disregard for the rights of others and to deter him and others from similar flagrant conduct.  While there is no "bright-line ratio" for courts to apply in calculating punitive damages, "few awards exceeding a single-digit ratio between punitive and

compensatory damages, to a significant degree, will satisfy due process." *Campbell*, 538 U.S. at 425 (finding a ratio of 145:1 to violate Due Process and explaining that, historically, double, treble, or quadruple damages are used to deter). I conclude that a punitive damages award at a ratio of 1:1—resulting in doubling Plaintiff's damages—is appropriate to deter future tortious misconduct. Accordingly, the Court will enter an award of punitive damages for Plaintiff against Defendant Korey Blanck in the amount of $25,275.64.

## VI.    CONCLUSION

For the foregoing reasons, the Court will enter Judgment in favor of Defendants Ace Restaurant Supply, LLC; Korey Blanck; and Nicholas Blanck on Counts One and Two of the Complaint. The Court will enter Judgment in favor of Defendant Nicholas Blanck on Counts Three, Four, Five, and Six of the Complaint. The Court will enter Judgment in favor of Plaintiff against Defendant Korey Blanck and Defendant Ace Restaurant Supply in the amount of $25,275.64 on Counts Three, Four, Five, and Six of the Complaint. Plaintiff is further entitled to a punitive damages award against Defendant Korey Blanck for the assessed amount of $25,275.64.

Judgment will be entered in favor of Plaintiff in the amount of $50,551.28. An appropriate Order follows.

BY THE COURT:


 /s/ Lynne A. Sitarski_____
LYNNE A. SITARSKI
United States Magistrate Judge